IRVING et al. v. JOINT DIST. COUNCIL OF NEW YORK AND VICINITY OF UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA AND AMALGAMATED SOCIETY OF CARPENTERS AND JOINERS OF AMERICA et al.

THE CARPENTER CASE.

(Circuit Court, S. D. New York. July, 1910.)

1. WORDS AND PHRASES—"CLOSED SHOP."
    A "closed shop" is one that employs union labor only.

2. COURTS (§ 276*)—FEDERAL JURISDICTION—WAIVER OF OBJECTIONS.
    By appearing in a suit in the federal Circuit Court, defendants waived any objection that the suit was not brought in the district where plaintiffs or they reside.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 815; Dec. Dig. § 276.*]

3. COURTS (§ 315*)—FEDERAL JURISDICTION—CITIZENSHIP.
    A voluntary unincorporated association is not a citizen of any state, and hence the federal Circuit Court has no jurisdiction of a labor union constituting such association, nor of its members generally, on a bill against them to enjoin interference with an employer's business.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 861; Dec. Dig. § 315.*]

4. COURTS (§ 318*)—FEDERAL JURISDICTION—DISMISSAL OF PARTY—EFFECT.
    A bill in the federal Circuit Court to enjoin interference with an employer's business may be dismissed as to a voluntary unincorporated labor union and its members generally, for want of jurisdiction of them, and stand as to the remaining individual defendants.
    [Ed. Note.—For other cases, see Courts, Cent. Dig. § 863; Dec. Dig. § 318.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

5. INJUNCTION (§ 136*)—PRELIMINARY INJUNCTION—PROOF REQUIRED.

On motion for a preliminary injunction, it is only necessary to show that a cause of action exists, and that irreparable injury will be done complainants, unless they are protected.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 305, 306; Dec. Dig. § 136.*]

6. TRADE UNIONS (§ 6*)—RIGHTS OF PARTIES.

Workingmen have the right to unite to protect themselves, and to strike peaceably for grievances, but not to threaten owners, builders, and architects that their contracts will be held up if they, or any of their subcontractors, use another employer's products.

[Ed. Note.—For other cases, see Trade Unions, Cent. Dig. § 5; Dec. Dig. § 6.*]

7. INJUNCTION (§ 163*)—PRELIMINARY INJUNCTION—INTERFERENCE WITH EMPLOYERS.

On a bill to enjoin interference with an employer, an injunction is properly continued pending the action, restraining individual defendants from calling out employés in other trades who have no grievances against their employers, and from notifying owners, builders, and architects and others that they are likely to have their operations suspended if they use complainant's products.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 357–371; Dec. Dig. § 163.*

Restraining boycotts, strikes, and other combinations by employés interfering with commerce or business, see note to Shine v. Fox Bros. Mfg. Co., 86 C. C. A. 313.]

In Equity. Bill by Charles R. Irving and another, partners as Irving & Casson, against the Joint District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America and the Amalgamated Society of Carpenters and Joiners of America and others. On motion to continue a restraining order as a temporary injunction. Motion granted.

Walter Gordon Merritt, for complainants.
Charles Maitland Beattie and William P. Maloney, for defendants.

WARD, Circuit Judge. This is a motion to continue in the form of a preliminary injunction a restraining order heretofore granted. It involves the question how far labor organizations, and their officers and members, can go to compel an employer of labor to maintain a closed shop; that is, to employ union labor only. Upon this argument the jurisdiction of the court is rested upon the difference of citizenship of the parties only.

The complainants are copartners, citizens of Massachusetts. The defendants are: (1) The Joint District Council of New York and Vicinity of the United Brotherhood of Carpenters and Joiners of America and the Amalgamated Society of Carpenters and Joiners of America, and the members of said Joint District Council; (2) Edward H. Neal, as secretary of the Joint District Council and individually; (3) David French, Joseph Crimmins, L. E. Storey, Henry W. Blumenberg, Henry Erickson, William O'Grady, Frederick Dhuy, Harry Lea, Thomas Dalton, Frank Hellereith, George Lynch, August Nagel, James B. Smith, James Martin, Julian Wazeter, indi-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

vidually and as business agents of said Joint District Council; (4) Charles H. Bausher, individually and as business agent of the said Joint District Council, and as a member of the General Executive Board of the United Brotherhood of Carpenters and Joiners of America; (5) Frank Duffy, individually and as secretary of the United Brotherhood; (6) William D. Huber, individually and as president of the United Brotherhood. All of the individuals named are citizens of other states than Massachusetts, and have been served with the subpœna by the United States marshal, except L. E. Storey, James Martin, and Julian Wazeter, citizens of New York, and Frank Duffy and William D. Huber, citizens of Indiana.

A demurrer, a plea, and an answer have been filed to the whole bill on behalf of all the defendants "other than the members of said Joint District Council," so that they are all before the court; Duffy and Huber, by appearing, having waived the objection that the action is brought neither in the district where the plaintiffs nor they themselves reside. Counsel for both parties wish a decision on the merits, and disclaim any disposition of the case on technicalities. Therefore, though the answer to the whole bill overrules the demurrer and the plea, I have considered all objections set up in the demurrer and plea, but shall mention only one I think good.

The defendants object that the Joint District Council, being a voluntary unincorporated association, is not a citizen of any state, and therefore the court has no jurisdiction of it or of its members generally. I think this objection good. Chapman v. Barney, 129 U. S. 677, 9 Sup. Ct. 426, 32 L. Ed. 800; Taylor v. Weir, 171 Fed. 636, 96 C. C. A. 438. The bill may be dismissed as to the Joint District Council and its members generally, and stand as to the other defendants, in accordance with the practice indicated in Oxley Stave Co. v. Coopers' Union (C. C.) 72 Fed. 695, affirmed 83 Fed. 912, 28 C. C. A. 99. There are intimations that service upon some of the members of such associations may be good as against the association and the other members in United States v. Coal Dealers Ass'n (C. C.) 85 Fed. 252, American Steel & Wire Co. v. Wire Drawers' Unions 1 and 3 (C. C.) 90 Fed. 598, and Evenson v. Spaulding, 150 Fed. 517, 82 C. C. A. 263, 9 L. R. A. (N. S.) 904. If these cases mean more than that members of the associations not served may be held guilty of contempt if they knowingly assist in the violation of an injunction which has been granted, I am not disposed to follow them.

The particular grievance alleged in the bill may now be considered. The complainants are engaged in the manufacture of fine interior woodwork at East Cambridge, Mass., which they erect in place anywhere throughout the United States. They keep an open shop, employing union and nonunion labor without discrimination. For this reason they are regarded as enemies by the United Brotherhood. It has, and has long had, in the language of the defendants, a trade dispute with the complainants. The United Brotherhood is a voluntary unincorporated association having a membership of carpenters and joiners throughout the United States aggregating 185,000. These members are divided into local unions, which are also voluntary unincorporated associations and are represented by district councils,

composed of delegates from the local unions constituting the district. The members of the local unions are by virtue of that membership also members of the United Brotherhood and entitled to vote for delegates to its general conventions and for its general officers. The Joint District Council of New York and Vicinity consists of some 70 local unions of the United Brotherhood and of the Amalgamated Society of Carpenters and Joiners of America. There can be no question that these bodies constitute and are designed to constitute a combination of great power. The bill alleges that this power is being unlawfully used against the complainants, in that on April 21, 1910, they having begun work under a contract for the woodwork of the Cathedral of St. John the Divine in this city, the defendant French, business agent of the Joint District Council of New York, ordered their men to quit work because this product was "unfair"—that is, the product of an open shop—and the men did quit work. April 22d the complainants' foreman, having called upon the defendant Crimmins, shop delegate of the Joint Council, was informed by him that the men could not go back until the complainants kept a union shop in Massachusetts. April 23d, in another interview with the defendant French, the complainants' foreman was told that if he put nonunion work on the work at the cathedral, he (French) would pull out all the other trades working there. I have no doubt that this would have been done, nor is it denied in the affidavit submitted by the defendants. Thereupon the complainants obtained an order to show cause why a preliminary injunction should not be issued, and a restraining order in the meantime, which was granted.

For the purpose of showing the existence of the combination alleged in the bill, the complainants have referred to various incidents not connected with the particular charge relied on. September 26, 1906, Local Union No. 1,824, of Boston, presented a resolution to the meeting of the General Executive Board of the United Brotherhood, requesting that the complainants be placed upon the unfair list of the United Brotherhood. January 24, 1907, this request was denied; but the board requested all district councils, local unions, and members of the United Brotherhood to assist No. 1,824 by refusing to handle any material manufactured by the complainants. February 7, 1907, upon receiving additional information, the general president was instructed to notify members in districts where the complainants' trim is used "of the condition under which the trim is manufactured and the law of the United Brotherhood regarding the same." July 20, 1907, Local Union 1,824 presented to the convention of the United Brotherhood a resolution reciting that, the strike of Local Union 1,824 against the complainants having run 14 months, it was recommended to the entire membership to refuse to handle any trim coming from them, which was adopted. January 23, 1908, Frank Duffy, general secretary of the United Brotherhood, wrote the following letter:

"I am in receipt of information from our district council in Boston to the effect that the firm of Irving & Casson of that city is figuring on the contract for the U. S. Armory School at West Point, for which you are the architects. I desire to call your attention to the fact that the above-mentioned firm is

and has been for several years past unfair to organized labor, and our organization has been fighting said firm for some time. I would therefore ask that you do all in your power to have the contract for this job let to some fair concern. You will thereby aid us materially in our fight against Irving & Casson, and I am sure that anything you may do along the lines suggested will be appreciated."

July 14, 1908, he also wrote the following letter:

"I am in receipt of information to the effect that you have the contract for a large residence in Brookline, the owner of which is Ex-Governor Powers, of Maine, and that the firm of Irving & Casson is figuring on the interior trim for said job. I am therefore writing to inform you that this firm is now and has been for some time past one of our greatest enemies, having absolutely refused on more than one occasion to pay our members union wages and work them union hours. It is only natural, therefore, that we should wish to have the work given to some firm which is fair to the members of our organization, and I would therefore request that you use your influence in having the contract for the interior woodwork on this job let to such a firm. I can assure you that anything you may do for us along this line will be thoroughly appreciated. Thanking you in advance for your kind attention in this matter, I am respectfully yours."

Instances are set out in the complainants' affidavits in which they have lost business because of notifications coming from the combination. Although their bid was satisfactory in the case of the Fifth Avenue Building, on the corner of Twenty-Third street and Fifth avenue, the architect refused to accept it because he feared labor complications likely to result from their keeping an open shop. A similar thing occurred in connection with estimates on wood finishing for the Church of St. Bartholomew. Other cases in which the complainants were interfered with arose in connection with a contract made in Bristol, Conn., in March, 1909, and in connection with the building of the Second National Bank, at Twenty-Eighth street and Fifth avenue, in the fall of 1908, and in connection with the house of H. H. Beard, Sixty-Eighth street and Madison avenue, in 1907, and with the Gainsborough Studio in the fall of 1908, and with the house of A. L. Stirn at Stapleton, Staten Island, in the summer of 1908.

Without meeting these instances of interferences categorically, the defendants object that they are stated upon hearsay and lack precision. No doubt more and better evidence would be required on final hearing, but all that is needed upon a motion for a preliminary injunction is to satisfy that a cause of action exists and that irreparable injury will be done the complainants unless they are protected. In such a case a preliminary injunction ought to issue.

The right of workingmen to unite for their own protection is undoubted, and so is their right to strike peaceably because of grievances; but their right to combine for the purpose of calling out the workmen of other employers who have no grievances, or to threaten owners, builders, and architects that their contracts will be held up if they or any of their subcontractors use the complainants' trim, is quite another affair. To take the converse of the proposition: Will the defendants admit that employers may combine to prevent any employer from using union labor? May the employers agree not to sell to or contract with any one who deals with an employer who uses union labor?

Either of these propositions is destructive of the right of free men to labor for or to employ the labor of any one the laborer or the employer wishes. See the language of Justice Harlan in Adair v. United States, 208 U. S. 161, 174, 28 Sup. Ct. 277, 52 L. Ed. 436. If the struggle is persisted in between labor and capital to establish a contrary view, ultimately either the workmen or the employers will be reduced to a condition of involuntary servitude.

Whether the complainants do a large business, or, as the defendants allege, a small business, there is no doubt that the defendants by combination between themselves and with others have determined to force them against their will to maintain a closed shop in Massachusetts or go out of business, and to compel all persons in their employment, whether they will or not, to become members of the union or lose their employment. Of certain suggestions in the defendants' papers that the complainants are seeking to prevent the workingmen from organizing and striking and from communicating with each other, it may be said in the words of Brown, J., in the Supreme Court of Pennsylvania, in Purvis v. Local No. 500, United Brotherhood of Carpenters and Joiners, 214 Pa. 348, 353, 63 Atl. 585, 586, 12 L. R. A. (N. S.) 642, 112 Am. St. Rep. 757:

"The zeal of counsel may account for, but can hardly excuse, the statement in appellants' paper book of the questions involved on this appeal. They are there stated to be: 'Is the dissemination by means of printed notices by a lawfully constituted lodge of union laborers to its members and employers of labor, of its adopted rules by virtue of its constitution forbidding its members to work nonunion material, an unlawful conspiracy? Is it lawful by peaceful means to make effective such rules?' From an examination of the averments of plaintiffs' bill, the ample proofs submitted in support of them, and of the facts found by the court below, it is most manifest that the only question before us is whether the appellants were properly enjoined from injuring and destroying the business of the appellees, in pursuance of a conspiracy to do so, as a penalty for their refusal to unionize their mill. This would mean to the appellees, as they aver, that they would be compelled to employ only union workmen, and to yield their free and unrestricted right to select their own employés in the conduct of their business; that they would be compelled to submit themselves to the control of the union, and to put themselves within its power to dictate to them the number of hours to constitute a day's work in their mill, the compensation to be paid therefor, the time of payment thereof, and the selection of their employés. It would be a recognition of the power of the agents of the union to practically control their business."

The particular acts sought to be enjoined in this case are the calling out of the employés in other trades, who have no grievance against their employers, and the notification of owners, builders, architects, and third persons that they are likely to have their operations held up if they use the complainants' trim. Whether the complainants may be found to have other rights on final hearing, and whether persons not parties may be guilty of contempt if they knowingly assist in the violation of the preliminary injunction to be issued, need not now be considered.

Motion granted, with leave to the parties to submit within one week forms of order which they respectively think appropriate under this opinion.