## CHARLES A. RAMSAY COMPANY *v.* ASSOCIATED BILL POSTERS OF THE UNITED STATES AND CANADA ET AL.

## WM. H. RANKIN COMPANY *v.* ASSOCIATED BILL POSTERS OF THE UNITED STATES AND CANADA ET AL.

ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

Nos. 100, 101. Submitted November 15, 1922.—Decided January 2, 1923.

1. A combination of many billposters, throughout the United States and Canada, to destroy competition in the business of posting bills and secure a monopoly, by limiting and restricting commerce in posters to channels dictated by them, to exclude others from the trade, and to enrich themselves by demanding noncompetitive prices, *held* violative of the Anti-Trust Act. P. 511.
2. Solicitors of advertising, for customers in many States, who prepared, designed, purchased and sold posters and caused them to be displayed by local billposters in many places throughout the Union and Canada, and whose business suffered from the above-mentioned combination, were entitled to sue the alleged conspirators for triple damages under the Anti-Trust Act. P. 511.

271 Fed. 140, reversed.

ERROR to judgments of the Circuit Court of Appeals affirming judgments of the District Court which sustained demurrers and dismissed the complaints in two actions for triple damages under the Sherman Act.

*Mr. John A. Hartpence* and *Mr. Thomas G. Haight* for plaintiffs in error. *Mr. John B. Johnston* was also on the brief.[1]

---

[1] On motion of counsel for plaintiff in error, the writ of error, in each case, as to the defendants Kings County Trust Company, Annie Link and Kirwin H. Fulton, executors of the estate of Barney Link, deceased, was, on November 15, 1922, dismissed without costs to either party.

It is difficult to conceive of a plan better calculated to bring about a complete monopoly in the billposting business than that devised and put into effect by the defendants. There was to be only one billposter in each city or town in the United States and Canada and no member was to compete with another; members were furnished with funds of the association to buy out competing concerns in their respective localities; advertisers could not have their billposting done by members of the association if they did business with a non-member; no lithographer could furnish stock posters to independent billposters or advertisers (unless the latter were to have . the posters placed by members of the association) except under penalty of having the members of the association refuse to deal with them; and finally business could be taken by members only through twelve licensed solicitors throughout the whole of the United States and Canada. The inevitable effect was to monopolize the billposting business throughout the United States and Canada. *United States* v. *Associated Bill Posters*, 235 Fed. 540, 541.

A further result of the monopoly thus created was that it enabled the members of the association to fix what rates they saw fit, and to drive out of business all but the favored twelve of those who had theretofore been engaged in the legitimate business of advertising agents or who might thereafter desire to engage in that business.

The immediate and direct effect was also to restrain interstate commerce. This follows from either of two aspects of the cases.

(A) When the defendants and other members of the association combined and took the steps which they did to prevent lithographers from selling stock or sample posters to independent billposters, and to make it impossible for advertisers to purchase such posters if they desired and purposed to have them posted by non-mem-

bers, they directly restrained commerce; and, as the lithographers were in most cases located in different States than the purchasers of the posters, they directly restrained interstate commerce.

In this aspect, the cases cannot be distinguished from *Montague & Co.* v. *Lowry,* 193 U. S. 38; *Eastern States Retail Lumber Dealers' Association* v. *United States,* 234 U. S. 600, and *Belfi* v. *United States,* 259 Fed. 822. Moreover, they fall clearly within the principle of the decisions of this Court in *Loewe* v. *Lawlor,* 208 U. S. 274, and *Swift & Co.* v. *United States,* 196 U. S. 375.

In *Hopkins* v. *United States,* 171 U. S. 578, as well as in *Anderson* v. *United States,* 171 U. S. 604, it was pointed out that there was no evidence of any act on the part of the defendants preventing purchases and sales of cattle by anyone other than that such sales were prevented by the mere refusal on the part of the defendants to do business with non-members (commission merchants) in a manner violative of the rules of the respective exchanges. See *Swift & Co.* v. *United States,* 196 U. S. 375, 397. *Blumenstock Brothers Advertising Agency* v. *Curtis Publishing Co.,* 252 U. S. 436, is not applicable to this case. See *Stafford* v. *Wallace,* 258 U. S. 495.

(B) In another aspect of the case also, the defendants have directly restrained interstate commerce. The purchase of posters by advertisers or agents, such as the plaintiffs, and the shipment of the same to other States to be posted on billboards surely constitute interstate commerce within the decisions of this Court. The purchase, shipment and posting must be considered in the light of one complete commercial transaction. When the defendants, therefore, conspired to refuse to accept for posting upon their billboards the advertising matter of any advertiser who gave any of his business to a non-member, and by the other means before mentioned made it impossible for him to deal with non-members, they re-

strained interstate commerce—they restricted the number of persons with whom·advertisers·could deal and prevented the natural flow of commerce; they made impossible the complete commercial transaction. It will not do to overlook the great part which poster advertising plays in the commercial intercourse of the nation. In determining whether there has been an unlawful restraint, all of the elements which make up the completed scheme or plan to monopolize the billposting business must be considered, and although the parts may be lawful, the plan as a whole may make them unlawful. *Swift & Co.* v. *United States,* 196 U. S. 375, 396. Therefore, although it may have been, standing alone, lawful for the defendants to refuse to post the bills of certain advertisers, yet if the whole plan or scheme of which that·was merely a part was unlawful, the refusal became unlawful.

The business of plaintiffs bore a direct relation to the interstate commerce unlawfully restrained, and was injured in such a way. as to entitle them to maintain an action under § 7 of the Sherman Act. *United Copper Securities Co.* v. *Amalgamated Copper Co.,* 232 Fed. 574; *Chattanooga Foundry & Pipe Works* v. *Atlanta,* 203 U. S. 390.

The plaintiffs purchased and sold the advertising posters and shipped them from State to State. Their contracts with their customers or clients necessarily involved, therefore, the movement of goods in interstate commerce; as, for the same reason, did also their dealings with the billposters. There was nothing of that kind in the *Blumenstock Case.* Moreover, in that case the complaint was that the defendant was attempting to monopolize certain advertising business. 252 U. S. 441. Consequently, the business there attempted to be monopolized had to be interstate commerce to come within the Sherman Act, and the defendants, therefore, engaged therein. In the cases at bar, the charge is that the de-

fendants conspired to restrain interstate commerce; hence, they need not have been engaged themselves in interstate commerce.     *Loewe* v. *Lawlor,* 208 U. S. 274.

If it be decided that the only unlawful restraint is that imposed upon the sale of the posters, it is impossible to say that the injuries, which the plaintiffs' businesses sustained, were not due to some considerable extent to that restraint.

It is inconceivable that there is no direct relation between an unlawful restraint and an injury, when the plan as a whole, containing one or more unlawful restraints, is so devised as to drive the plaintiffs out of business. *United Copper Securities Co.* v. *Amalgamated Copper Co.,* 232 Fed. 577.

The plaintiffs are not barred from recovery because they were formerly licensed to solicit work and place it with members of the association.     Distinguishing, *Bluefields S. S. Co.* v. *United Fruit Co.,* 243 Fed. 1.

*Mr. Richard T. Greene* for defendants in error.     *Mr. Daniel S. Murphy* and *Mr. H. C. Lutkin* were also on the brief.

Neither the posting of posters nor the soliciting of such business affects interstate commerce, except incidentally. Therefore, if, as claimed, the plan has brought about a complete monopoly of the billposting business, it is not condemned by the Sherman Act.     *Federal Baseball Club* v. *National League,* 269 Fed. 681; affirmed, 259 U. S. 200; *Blumenstock Brothers Advertising Agency* v. *Curtis Publishing Co.,* 252 U. S. 436; *Hopkins* v. *United States,* 171 U. S. 578; *Anderson* v. *United States,* 171 U. S. 604.

There is no allegation in the complaints that defendants attempted in any way to restrict freedom of production, sale, transportation or use of *special* posters, which constitute the great volume of the business, or that the rules and regulations adopted by the defendant associa-

tion affected interstate commerce in *special* posters, except remotely and incidentally.

The plaintiffs are engaged in soliciting national business only, in which special posters are used exclusively. Such restraint as existed affecting stock posters was segregated from and did not in any way affect the business of national outdoor advertising.

No claim is made that rates fixed for billposting service were unreasonable or excessive. The *Hopkins Case* is authority for the proposition that the mere power to fix rates for intrastate transactions, does not necessarily imply a restraint of interstate trade and commerce.

The limitation of the number of licensed solicitors of billposting contracts is a legitimate and proper regulation of the billposting business under the decision in the *Hopkins Case*.

In the *Blumenstock Case* the advertisements were published in magazines which were intended to be and were thereafter objects of interstate commerce; but this Court held that the refusal to accept advertisements was too remote in its relation to the interstate commerce of circulating magazines to render the defendant liable under the Sherman Act. The refusal to accept advertisements for the billboards is even more remote in its relation to interstate commerce in posters, which precedes the publication of the advertisements by posting the posters on the billboards. The posters are consumed upon the billboards.

There is no allegation in the complaints that the defendants ever purchased posters; and the allegation that the members of the association threatened to refuse " to deal " with lithographers is meaningless, because the members of the association never had any dealings with lithographers and their business was such that they had no occasion to deal with lithographers. They dealt with advertisers and solicitors exclusively. There is, therefore, no allegation that the defendants have exercised any direct restraint upon interstate commerce.

The plan of organization of the defendant association, as alleged, was not designed, and was not in any way used, to effect any restraint upon commerce in posters. In so far as there was any direct restraint upon interstate commerce in stock posters, it was effected solely by threats that the members of the association would refuse to buy stock posters. The purchase of stock posters was not a part of the billposters' business. There is no allegation in the complaints that any of the measures adopted by the association took cognizance of the source of any poster offered to members for posting. Whether or not the posters offered to defendants for posting were manufactured by lithographers engaged in selling stock posters to independent billposters or to advertisers intending to use them on independent boards, they would be accepted and posted by the defendants if they came through one of the licensed solicitors from an advertiser who gave all his billposting business to members of the association. It thus appears that, in the alleged attempt to prevent the sale of stock posters to independent billposters and to advertisers intending to place them upon independent boards, the defendants did not make any use of the measures adopted by the association relating to the billposting business, but relied solely upon threats of refusal of members to buy stock posters. The alleged combination to monopolize the billposting business was separate and distinct from, and had no relation to, the alleged restraint upon interstate commerce in stock posters. But even if it could be said, as claimed by plaintiffs, that these separate and distinct things were parts of an entire scheme or plan, it would nevertheless be true, as held by Judge Hand, that the plaintiffs have not been injured in their business or property " by reason of anything forbidden or declared to be unlawful " by the Sherman Act.

Any restraint upon interstate commerce in special posters which may have resulted from the control which

the defendants exercised over the business of posting
posters upon billboards was too remote, being merely
incidental to the object of the defendants, which was to
regulate and control the billposting business. On the
other hand, the restraint upon interstate commerce in
stock posters which it is claimed is alleged in the com-
plaints, if it existed at all, was the direct result of the
threats of refusal by members of the association to buy
stock posters. Plaintiffs were not affected by such re-
straint upon interstate commerce in stock posters.

Even if, as claimed, the business of the plaintiffs had
a direct relation to interstate commerce in special posters,
the decision in the *Blumenstock Case* is an authority
against the claim of plaintiffs that they are entitled to
recover for the injury to their business occasioned by the
incidental restraint upon interstate commerce in special
posters. Under the *Blumenstock Case* the alleged at-
tempt to monopolize the billposting business is too re-
mote in its relation to interstate commerce in special
posters to come within the Sherman Act.

But the plaintiffs' business was not that of buying and
selling posters. Incidentally and as agent for or in aid
of their advertising customers, they supervised the pro-
duction of the special posters and settled the lithog-
rapher's bills and included them in their own charges.
Their business was purely that of solicitors of advertising
contracts. They were not merchants or traders in goods.

Plaintiffs cannot maintain an action against their
former associates in the alleged unlawful combination
based upon defendants' refusal to renew plaintiffs'
licenses to continue in such combination and to reap their
share of the profits of the alleged unlawful combination.
*Bluefields S. S. Co.* v. *United Fruit Co.*, 243 Fed. 1;
appeal dismissed, 248 U. S. 595; *Eastman Kodak Co.* v.
*Blackmore,* 277 Fed. 694; *Lee Line Steamers* v. *Memphis
Co.*, 277 Fed. 5; *McMullen* v. *Hoffman*, 174 U. S. 639;

*Continental Wall Paper Co.* v. *Voight & Sons Co.,* 212 U. S. 227.

Mr. Justice McReynolds delivered the opinion of the Court.

These are separate actions for treble damages under the Sherman Act. The plaintiffs are distinct corporations and demand different sums; otherwise their complaints are identical. Holding no cause of action was stated the trial court dismissed both complaints, upon demurrer, and the Circuit Court of Appeals affirmed this action. 271 Fed. 140. It will suffice to state the substance of the pertinent allegations.

Plaintiffs were solicitors of advertising for customers in many States. They prepared, designed, purchased and sold posters and caused them to be displayed by local operators in many cities and towns throughout the United States and Canada. They contracted with their customers and received pay for the entire service of preparing, designing, purchasing and posting the advertisements and were engaged in interstate commerce.

Defendants are a New York corporation and its officers and directors, together with certain favored solicitors.

Advertising by posters has become common, and in most of the larger cities and towns throughout this country and Canada one or more local concerns follow the business of displaying them. Usually advertisers contract with a lithographer directly or through agents (solicitors) such as plaintiffs for the manufacture or purchase of posters, and with the local billposter for displaying them. Often the lithographer does business in a different State from the advertiser and both operate in different States from those where most of the billboards are located. Some posters are prepared for the exclusive use of an advertiser and some (" stock " or " sample " ones) for general use. Nearly all are put out by six or eight lithographers.

In 1891 many billposters throughout the United States and Canada, theretofore in competition, entered into a combination and conspiracy to monopolize the business in their respective localities and to dominate and control all trade and commerce in posters within such limits. To that end they organized a voluntary association—afterwards incorporated—whose membership is now very large.

The following were among the means adopted for carrying out the purposes of the combination and conspiracy. (a) Membership has been restricted to one employing billposter in each town or city and members have been prohibited from competing with each other. (b) Funds have been furnished to members for buying out competitors. (c) Rules prevent members accepting certain work from an advertiser who has given business to a nonmember. (d) A schedule of prices has been fixed and members have been prohibited from accepting certain kinds of work from any one except solicitors (twelve in all) arbitrarily selected and licensed, who are forbidden to patronize a nonmember in any place where any member does business. (e) By threats of withdrawal of patronage, manufacturers have been prevented from furnishing posters to independent billposters or to advertisers desiring to do business with independents except upon prohibitive terms.

The Association's membership has become large, its powers and influence great, while the number of independent billposters has greatly declined, and it is now practically impossible for an advertiser to utilize posters except by employing members of the Association and upon terms arbitrarily fixed. Advertisers are not permitted to purchase " stock " posters unless willing to have them displayed upon boards of members, and independent billposters cannot purchase such matter at all.

Plaintiffs had developed a lucrative and profitable business when in July, 1911, the Association canceled their

licenses and refused to renew the same. Now, as a result of the defendants' unlawful acts, they are disabled from competing in the markets and their business is restricted and unprofitable.

The court below held: " The business of the solicitors is to send their customers' advertisements to be posted on billboards in various towns and cities throughout the country. Assuming that this business is, as between them and their customers, interstate commerce, we are clear that, after the posters have arrived at destination, the posting of them by the bill poster is a purely local service, not directly affecting, but merely incidental to, interstate commerce. We think this follows from the decision of the Supreme Court in *Hopkins* v. *United States,* 171 U. S. 578."

We cannot accept this view. The alleged combination is nation-wide; members of the Association are bound by agreement to pursue a certain course of business, designed and probably adequate materially to interfere with the free flow of commerce among the States and with Canada. As a direct result of the defendants' joint acts plaintiffs' interstate and foreign business has been greatly limited or destroyed. *Hopkins* v. *United States* is not applicable. There the holding was that the rules, regulations and practices of the association directly affected local business only. The purpose of the combination here challenged is to destroy competition and secure a monopoly by limiting and restricting commerce in posters to channels dictated by the confederates, to exclude from such trade the undesired, including the plaintiffs, and to enrich the members by demanding noncompetitive prices. The allegations clearly show the result has been as designed, that the statute has been violated and plaintiffs' business has suffered.

This Court has heretofore laid down and adequately discussed the applicable principles. *Montague & Co.* v. *Lowry,* 193 U. S. 38, 45, 46; *Swift & Co.* v. *United States,*

196 U. S. 375, 396; *Loewe v. Lawlor,* 208 U. S. 274, 293, *et seq.; Gompers v. Bucks Stove & Range Co.,* 221 U. S. 418, 438; *Eastern States Retail Lumber Dealers' Association v. United States,* 234 U. S. 600, 609. See also *United States v. Associated Bill Posters,* 235 Fed. 540. The fundamental purpose of the Sherman Act was to secure equality of opportunity and to protect the public against evils commonly incident to destruction of competition through monopolies and combinations in restraint of trade. The alleged actions of defendants are directly opposed to this beneficent purpose and are denounced by the statute.

We find no adequate support for the claim that plaintiffs were parties to the combination of which they now complain.

*Reversed.*