**O'BRIEN et al. v. FACKENTHAL.**

(Circuit Court of Appeals, Sixth Circuit. May 16, 1925.)

No. 4110.

Injunction ☞63—Sheet metal manufacturer employing union carpenters to install his product held entitled to injunction restraining interference by Sheet Metal Workers' Union claiming right to such work.

Complainant, constructor of sheet metal doors and frames, who employed union carpenters to install his product, and who had contract with city for furnishing and installation of metal doors and casings in municipal buildings under construction, *held* entitled to injunction restraining officers of Sheet Metal Workers' Union, claiming that under award of National Board they were entitled to such work, from interfering with plaintiff by strikes or coercion of city inducing it to break its contract with complainant.

Mack, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; D. C. Westenhaver, Judge.

Suit in equity by Joseph D. Fackenthal, ancillary receiver of the Central Metal Prod-

ucts Corporation, against William O'Brien, individually and as secretary of Local No. 65, and as vice president of the Amalgamated Sheet Metal Workers' International Alliance, and others. Decree for plaintiff, and defendants appeal. Affirmed.

This controversy is immediately between a Sheet Metal Workers' Union and a Carpenters' Union, at Cleveland. The facts are fully stated by the District Court in its first opinion. 278 F. 827. From the injunction entered upon this opinion there was an appeal; but we dismissed the appeal because the buildings, to work upon which the contest related, had been finished and the appeal had become moot. 284 F. 850. After remand, a supplemental bill was filed, and it was made to appear that there were issues still alive, particularly as to the more general rights involved. The district judge filed a supplemental opinion, parts of which are printed herewith, again ordered an injunction, and this appeal was taken.

To recapitulate briefly: Plaintiff below, appellee here, is a factory constructor of sheet metal doors, frames, etc. He also employs workmen and installs his product in the erection of the buildings where it is used. He employs union carpenters for that purpose. A so-called jurisdictional dispute has long existed between union carpenters and union sheet metal workers as to which craft had the right to install sheet metal doors and frames. It is claimed that this dispute was submitted by those representing the respective unions, to a building trade arbitration tribunal and decided against the carpenters. To this decision the Carpenters' Unions have refused to yield, for various stated reasons.

The city of Cleveland was engaged in erecting two buildings, upon each of which some sheet metal work was required which indisputably called for the employment of sheet metal workers. Upon one of these buildings plaintiff became subcontractor for furnishing and installing metal doors and frames and this work was in progress through his union carpenters. Thereupon the Sheet Metal Workers' Union threatened the city of Cleveland that unless it discharged plaintiff from his subcontract, or persuaded him to discharge the carpenters and employ the other union, they would strike upon both of these buildings, and one or both of these strikes in fact followed. There being no other sheet metal workers obtainable except those who had struck, the city yielded and discharged plaintiff from his subcontract. The injunction forbids a further continuance of this course of conduct.

Luther Day and Wm. J. Dawley, both of Cleveland, Ohio (J. Paul Thompson, of Cleveland, Ohio, on the brief), for appellants.

Walter Gordon Merritt, of New York City (Stanley & Horwitz, of Cleveland, Ohio, on the brief), for appellee.

Before DENISON, MACK, and DONAHUE, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). The majority of the court think that the judgment should be affirmed and, in the main, for the reasons stated by the district judge in both opinions. Judge MACK thinks otherwise. Under these circumstances it seems sufficient to state the conclusions of the majority without elaboration.

1. So far as the injunction may forbid the Sheet Metal Workers' Union from inducing and procuring other crafts to strike in aid of its position, neither the practical effects of the injunction nor the facts involved are clear enough to justify consideration. We do not think that particular subject-matter is necessary to be decided.

2. So far as the injunction forbids threats of strikes and coercion of that nature as to a building upon which plaintiff is not engaged and no carpenters are employed in the disputed work, the right to injunction has a stronger foundation than as to buildings upon which this dispute has become concrete; but the decree below cannot be wholly sustained by restricting it to this situation.

3. The sheet metal workers say that the carpenters have refused to abide by the controlling union laws; and, if this is true, then, so far as we can see, the carpenters have become, for this purpose and from the viewpoint of the sheet metal workers, nonunion men, and the legal aspect of the controversy is just the same as if between union and nonunion workmen.

4. The right to strike and threaten to do so, as a means of coercing an employer with whom the strikers have a direct controversy, and as a general right, is not questioned upon this appeal; it is the limitations upon that right which are here involved.

5. There is not and never was any employer-employee relation between the plaintiff and the Sheet Metal Workers' Union. There was no controversy between the building owner and this union. A valid contract existed between plaintiff and the city, and the defendants compelled the city to break it; and the city doubtless became, in a sense, engaged in a joint conspiracy with the sheet metal workers to compel the plaintiff to con-

duct his business in a way distasteful to him. The effort of the sheet metal workers is to succeed over their immediate opponent, the carpenters' employer, by injuring and threatening to injure third parties, the building owners, who are strangers to the controversy.

6. While the case does not show the malicious enticement of the Hitchman case, and while it does not present a secondary boycott in the precise aspect of the Duplex and Truax cases, we conclude that it is governed by the underlying principle of the two cases last named, and that the decree below was therefore justified upon that principle.

7. It is more than doubtful whether the Carpenters' Union was bound to submit or did submit this jurisdictional dispute to the arbitral tribunal. If not—as the district judge was inclined to think and as appellee forcibly argues—the questions chiefly relied on by appellant disappear from the case. At any rate, plaintiff was not bound by the arbitration, and cannot be compelled to conduct his business accordingly.

The decree is affirmed.

MACK, Circuit Judge, dissents.

The specified parts of the District Court opinion follow:

"2. Defendants are, in my opinion, proved to be engaged in a conspiracy, the objects of which are not lawful and the means adopted to carry it out are not lawful means. This is true for the reasons stated in my former opinion, which need not now be repeated. This conclusion is not only supported but compelled by the following cases: Loewe v. Lawlor, 208 U. S. 275, 28 S. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815; Gompers v. Bucks Stove & Range Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874; Lawlor v. Loewe, 235 U. S. 522, 35 S. Ct. 170, 59 L. Ed. 341; Hitchman Coal Co. v. Mitchell, 245 U. S. 229, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461; American Steel Foundries v. Tri-City Council, 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360; Truax v. Corrigan, 257 U. S. 312, 42 S. Ct. 142, 66 L. Ed. 254, 27 A. L. R. 375; United Mine Workers v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762. See, in addition, cases cited in my former opinion. These decisions of the United States Supreme Court define what are and what are not the lawful objects of a labor organization; what are and what are not lawful means to carry out those lawful objects; what is and is not a dispute between an employer and employees concerning terms or conditions of employment; what may and may not be done to third persons in furtherance of a labor dispute between an employer and its present, past, or expectant employees in a dispute concerning such terms or conditions of employment. These cases declare it unlawful to boycott third persons in aid of either party to that labor dispute. Whatever views I may entertain to the contrary, or whatever conflicting expressions may be found in decisions of other courts, must yield to these carefully considered declarations of the United States Supreme Court.

"3. Defendants' main reliance and chief justification for their conduct is that they are engaged in enforcing the award of a National Board of Jurisdictional Awards. This contention was dealt with in my former opinion so briefly and is reiterated so earnestly that some supplementary observations will be made. The Amalgamated Sheet Metal Workers' International Alliance is a national, if not an international, labor organization of sheet metal workers. It is also locally organized and has local organizations or unions. One of these locals, known as No. 65, has jurisdiction within the Cleveland territory. These unions assert that the work and labor of installing and hanging interior sheet metal trim of No. 10 gauge or lighter, such as doors, door frames, window frames, and transoms belong to their trade or craft; in other words, that it is a sheet metal workers' job and not a carpenters' job. The National Board of Jurisdictional Awards is an extralegal tribunal, said to be composed of members of the American Institute of Architects, the Engineering Council, the Associated General Contractors of America, the National Association of Building Trades Employers, and the Building Trades Department of the American Federation of Labor. It is said that a board of eight members, consisting of representatives designated by these several bodies, has heard this dispute between the sheet metal workers and the carpenters and have made an award that the work in question belongs to members of the Amalgamated Sheet Metal Workers' Union, and that the members of the United Brotherhood of Carpenters and Joiners refuse to respect or abide by this award.

"It is this so-called award that the defendants have combined and conspired to enforce against plaintiff. In enforcing this award, they contend that any means short of actual violence are lawful means, and that it is lawful to boycott owners or contractors

who have let contracts to plaintiff and others who will not agree to employ members of the Sheet Metal Workers' Union; coerce or induce them to break contracts with plaintiff and others who will not do so; and call and induce strikes against owners and other contractors if plaintiff and others are permitted to install sheet metal trim with workers not members of the Sheet Metal Workers' Union. Needless to say that the United Brotherhood of Carpenters and Joiners claim and exercise the same right whenever contractors attempt to install sheet metal trim, employing members only of the Sheet Metal Workers' Union.

"Defendants' contentions involve the assertion of a number of impossible rights. If their contentions are admitted, the members of the sheet metal workers' organizations are the only persons within the United States or at least within such parts thereof as the sheet metal workers may be organized, who have the right to work or labor in installing metal trim; that their members have obtained a monopoly of this kind of work to the exclusion of all other labor ready and willing to work; and that they may exclude from working at this kind of labor not merely members of the United Brotherhood of Carpenters and Joiners, but all other persons. If their contentions are sustained, then no owner or contractor wishing to have done a job calling for metal trim has the right to employ or contract with persons ready, willing, and able to do such work in competition with members of the sheet metal workers' organizations or without their consent. The legal consequence of admitting these asserted rights is that all persons not members of the sheet metal workers' organizations are thus deprived of liberty and property without due process of law. The right of every free man to work without interference for whoever may be willing to employ him, is denied. The right of every person wishing to have done a job of work calling for sheet metal trim, is denied his lawful right to employ freely others to do that work and have it done without interference. Congress may not thus deprive persons of liberty or property without violating the Fifth Amendment to the Constitution. No state may do so without violating the Fourteenth Amendment to the Constitution. These constitutional guaranties to each and every citizen of the right to life, liberty, and property, are vital, living principles, and have recently received most emphatic vindication by the United States Supreme Court in Meyer v. Nebraska, 262 U. S. 390, 43 S. Ct. 625, 67 L. Ed. 1042,

29 A. L. R. 1446, decided June 4, 1923, holding void state laws prohibiting any one from teaching German to children under ten years of age; and in Wolff Packing Co. v. Court of Industrial Relations of Kansas, 262 U. S. 522, 43 S. Ct. 630, 67 L. Ed. 1103, 27 A. L. R. 1280, decided June 11, 1923, holding void certain provisions of the Kansas law creating its court of industrial relations.

"Should we admit, however, that it is lawful to combine and conspire to enforce a monopolistic award of this nature, defendants' combination must nevertheless be denounced because the means resorted to in its enforcement are unlawful. Briefly stated, these means are efforts to induce owners and principal contractors to break their contracts with plaintiff; efforts to induce owners and principal contractors to refuse to perform contracts lawfully entered into with plaintiff; coercive efforts to compel plaintiff to discharge employees satisfactory to it with whom it has established contract relations, which efforts are nonetheless illegal even though such employment is at the will of both parties. The coercive means used are threats and intimidation against plaintiff and owners and principal contractors with whom it had valid and subsisting contracts; actual and threatened strikes of workmen employed by the owners, principal contractors, or other contractors, on the same or other jobs; indeed, the coercion and intimidation has extended even to the creation of a reasonable fear or apprehension that strikes in other building trades than the sheet metal working line would or might be called if plaintiff continued to employ union carpenters or if owners and principal contractors refused to break their contracts with plaintiff. As already said, these methods are unlawful. They are not means used in furtherance of the legitimate objects of a labor organization in a labor dispute between an employer and employees concerning terms and conditions of employment. These acts are directed towards third persons and are properly classifiable as secondary boycotts. Even if it be admitted that peaceable requests or persuasion might be used to induce plaintiff to discharge its union carpenters or to induce owners and principal contractors not to let contracts to plaintiff because of plaintiff's unwillingness to employ only members of the Sheet Metal Workers' Union, it is never lawful to induce or to attempt to induce peaceably or by persuasion, much less by threats, coercion, the calling of strikes, and the starting of boycotts, one to break an existing contract with another. Whenever

this is the object of the conspiracy, it is always held to be an illegal conspiracy, and all interference to prevent its performance, with knowledge of its existence, is unlawful.

"The utter absence of any legal basis to support defendants' contentions will, I think, be realized even by them if the situation were reversed. Let us assume that the Congress of the United States or the legislature of the State of Ohio should pass acts providing that all sheet metal trim should be done only by members of the United Brotherhood of Carpenters and Joiners of America; that such work should not belong to or be done by members of the Sheet Metal Workers' Union, or by any other labor or group of laborers, organized or unorganized; that no owner or contractor desiring this kind of work to be done, should or could hire any one so to do not a member of said United Brotherhood. This is the converse of the rights asserted by defendants. Any such law would be promptly declared void by any tribunal worthy to be called a court, as depriving men of the right to liberty and property without due process of law, in violation of the Fifth and Fourteenth Amendments to the Constitution. What Congress or the Legislature may not do directly, no group of labor organizations nor any extra-legal National Board of Jurisdictional Awards may do indirectly. The asserted rights and the adopted means are a step in advance of any ever heretofore asserted by a labor organization.

"If defendants may assert these rights and combine to enforce them, so likewise may the employers. That aspect of the situation has been so well summed up by Circuit Judge Ward in Irving v. Joint District Council (C. C.) 180 F. 896, that I adopt his statement as my own. At page 900 he says: 'The right of workingmen to unite for their own protection is undoubted, and so is their right to strike peaceably because of grievances; but their right to combine for the purpose of calling out the workmen of other employers who have no grievances, or to threaten owners, builders, and architects that their contracts will be held up if they or any of their sub-contractors use the complainants' trim, is quite another affair. To take the converse of the proposition: Will the defendants admit that employers may combine to prevent any employer from using union labor? May the employers agree not to sell to or contract with any one who deals with an employer who uses union labor? Either of these propositions is destructive of the right of free men to labor for or to employ the labor of any one the laborer or the employ-

er wishes. See the language of Justice Harlan in Adair v. United States, 208 U. S. 161, 174, 28 Sup. Ct. 277, 52 L. Ed. 436. If the struggle is persisted in between labor and capital to establish a contrary view, ultimately either the workmen or the employers will be reduced to a condition of involuntary servitude.' "