## AEOLIAN CO. et al. v. FISCHER et al.
### No. 270.

Circuit Court of Appeals, Second Circuit.

April 7, 1930.

Pavey & Higgins, of New York City (Walter Gordon Merritt and James C. Higgins, both of New York City, of counsel), for appellants.

James E. Smith, of New York City, for appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

The appellants appeal from a decree dismissing the bill of complaint after final hearing. The suit seeks to restrain the appellees, labor unions and individuals associated with them, from combining to restrain interstate commerce and destroying the business of the appellants by calling strikes or threatening to call strikes in building trades employed on buildings where the appellants were installing their organs, sold and shipped in interstate commerce. The case was here before, Aeolian Co. v. Fischer, 29 F.(2d) 679, where we affirmed an order denying the application for a preliminary injunction.

All the appellants but one are foreign corporations, and are organ manufacturers selling their product in interstate commerce to moving picture theaters, churches, and for private uses. The contracts are interstate in their nature, and provide for the building, shipping, erection, and sale of the completed organ in the house of installation.

The record differs in one aspect from that which we considered when it was here before. At final hearing, it was established and found by the court below, that the appellants were engaged in interstate commerce in the sale, shipment, and installation of its organs. The court below found that the appellants, with one exception, maintained organ factories outside of the state of New York and entered into contracts for the sale and installation of organs within the state; that the essential parts of the organ are made in the factories, with the exception of the flues leading from the air pipe to the air box of the chambers; some parts are temporarily assembled before shipment and are tested in the factory, but shipment is then made in separate parts and installed on the premises of the purchaser. The District Judge said:

"The agreement of the organ manufacturer to install is not only relevant and appropriate to the interstate sale but is essential if an organ, as distinguished from its parts, may be sold at all. The thing sold is a musical instrument, complete in itself. * * * Without descending to mechanical description it may be said that the work of installation is of the most vital importance in the construction of the completed organ, and requires in its performance not only the highest mechanical skill but a thorough understanding of the methods employed by the manufacturer in the arrangement of mechan-

ical and electrical connections. * * * Whatever distinctions may be drawn in doubtful cases, it is clear that the instant case is governed and controlled by the decision in the ice machine case (York Mfg. Co. v. Colley, 247 U. S. 21, 38 S. Ct. 430, 62 L. Ed. 963, 11 A. L. R. 611). The distinction there drawn between the setting up of lightning rods (Browning v. Waycross, 233 U. S. 16, 34 S. Ct. 578, 58 L. Ed. 828) and the installation of an ice machine shows that the contracts here in question for the construction and installation of organs clearly involve interstate commerce not only in the manufacture and shipment of the organ, but in its installation after arrival within the state."

With this conclusion we agree.

The only work performed by the purchaser is hoisting the organ parts, if unduly bulky, installation of high-voltage electrical connections, furnishing and installing the wind trunking between the blower room and the organ chamber, and the furnishing of light, heat, and electric power required for the erecting, tuning, and completion of the instrument. The other work of installation was performed by the appellants' skilled workers.

Labor troubles developed in the industry because of demands made by Organ Workers' Local No. 9 relative to wages and working conditions and the employment of men in New York City. This related to installation work. A general strike was called by that union, which lasted for fourteen weeks in 1925. In September, 1927, a delegate of the Organ Workers' Local No. 9 presented a form of union contract for signature to the appellant Wurlitzer Company, which made provision for the employment of none but union men and women. This contract was not signed by this appellant, and some of the men who were members of the union left the union. Organ Workers' Union No. 9 became affiliated with the Building Trade Council through the representation of its delegate, and the council consisted of various building trade unions of New York City. Its constitution forbids "their members to work with a nonunion man, or with members of a dual or hostile body to any industry represented." This co-operation on the part of the unions made it impossible for an employer or contractor engaged in the building trades to do his work with nonunion men, and the record shows that it is impossible for a building to be erected in this city without the exclusive employment of union labor. It resulted in having the force and effect of the Building Trades Council in back of the efforts of the Organ Workers' Local No. 9 to force unionism upon appellants' nonunion organ workers. It may be questioned whether installation of an organ is the work of erecting a building, for, when it is installed, the organ is still a musical instrument.

Organ Workers' Local No. 9 is also affiliated with the Combined Amusement Crafts, an association of stage hands and theater operators whose sympathetic support it had threatened to use. In February or March, 1928, Local No. 9 had a membership of about ninety men, and its delegate endeavored to get the nonunion men to join. His purpose was to unionize fully the outside work of erecting organs in New York and other parts of the country and then to unionize the factories by the requirements that all organs erected in a building where union labor is employed must be manufactured by union men and bear the union label. In order to prevent nonunion men working in the buildings where the appellants were installing organs, the delegate of Local No. 9 told purchasers of organs that he would call out all the trades on strike if the particular organ was installed by nonunion men. This threat was made to one Hammerstein, a purchaser of an organ for the Hammerstein Temple of Music, and to an owner who purchased an organ for the Plaza Theatre. In the Elks Club, Brooklyn, one of the appellants' (the Aeolian Company) men were locked out from the building. At the Plaza Theatre in Linden, N. J., workers were secretly substituted for the Wurlitzer men in violation of the terms of the contract of installation, and, after these men had been discovered and removed, it became necessary for the Wurlitzer Company to work at night in order to avoid interference with the building trades. The Wurlitzer Company men were driven from the work at the Ritz Theatre, Lindenhurst, N. J., and were off the job for a week until the electricians and other building trades had completed their work. Another instance of interference was a delay of from two to four days at the Castle Hill Theatre. Men were assaulted at the Marble Hill Theatre, and the entire force had to be removed and stayed away for about six weeks. The Wurlitzer men were arrested for trespassing at the Oxford Theatre, Little Falls, N. J., after the general contractor had been served with a general strike order. The owner of the Pythian Theatre was threatened with a general strike, and he paid to have the organ workers reinstated in the union so that they might finish the work unmolested. One contract, between the appellant Estey Organ

Company and the Capital Theatre for additions and repairs to an organ was canceled after threats to call out the theatrical trade, and the work was finished by union men not in the employ of the Estey Organ Company. The Austin Organ Company's workmen were taken off the installation of a theater at Mt. Vernon, N. Y., after threats made by a union delegate and were not permitted to return until after they had been unionized at the company's expense. The Skinner Organ Company was given three days of grace to unionize its men at the Colony Theatre, and they were only allowed to go on with the work after they had joined the Local No. 9 at the expense of that company. Other acts of interference with the appellants' interstate commerce consisted of threats to strike and unjustified claims of right of the sheet metal workers' delegate to do the wind trunking within the organ as well as without; also threats were made by the riggers' union delegate that the organ would have to be taken out of the building because it was rigged by nonunion men. In one instance a switchboard was nailed up and the electric wires cut by an electrician on the Universal Theatre job. The Electricians' Union Local No. 3 refused to do the wiring on the organ installed in the Church of the Redeemer in Brooklyn, and a general strike followed there.

These interferences with the appellants' business have seriously affected their good will, for organ purchasers are fearful of contracting with them, feeling that they would have difficulty in installing their instruments and also with the building trades unions. This interference stands uncontradicted, although the delegate of Union No. 9 was a witness for the defense.

In Anderson v. Shipowners' Ass'n, 272 U. S. 359, 47 S. Ct. 125, 126, 71 L. Ed. 298, plaintiff sought to enjoin the shipowners' association whose men controlled substantially all the merchant vessels of American registry, who engaged in interstate and foreign commerce, because they had entered into an arrangement to control the employment of all seamen on their vessels by maintaining employment agents in California and where every seaman was compelled to register and await his turn in order to secure employment. No person could secure employment unless he was registered, with the result that some seamen were delayed in securing work. The plaintiff was barred from employment because of failure to comply with these regulations, and brought this suit asking for an injunction and damages. In holding that the combination was illegal, the court said:

"If the restraint thus imposed had related to the carriage of goods in interstate and foreign commerce—that is to say, if each ship owner had precluded himself from making any contract of transportation directly with the shipper, and had put himself under an obligation to refuse to carry for any person without the previous approval of the associations—the unlawful restraint would be clear. But ships and those who operate them are instrumentalities of commerce, and within the commerce clause, no less than cargoes. * * * It is not important, therefore, to inquire whether, as contended by respondents, the object of the combination was merely to regulate the employment of men, and not to restrain commerce. A restraint of interstate commerce cannot be justified by the fact that the object of the participants in the combination was to benefit themselves in a way which might have been unobjectionable, in the absence of such restraint. * * * These shipowners and operators having thus put themselves into a situation of restraint upon their freedom to carry on interstate and foreign commerce according to their own choice and discretion, it follows, as the case now stands, that the combination is in violation of the Anti-Trust Act."

The undoubted purpose of the appellees was to monopolize the work with which the appellants were concerned, that is, the installation of organs, and require only their membership or union workers for each job. It restricted the liberty of employers and employees to engage in interstate commerce, whenever the employment of nonunion members is involved, and is an interference with interstate commerce. It is immaterial whether the combination is unlawful because it interferes with the right of nonunion men to engage in such part of interstate commerce or with the right of employers of nonunion men to so engage; the result is the same. If the combination is illegal for either reason, the person or corporation injured in its or his property rights is entitled to relief. Chattanooga Foundry & Pipe Works v. City of Atlanta, 203 U. S. 390, 27 S. Ct. 65, 51 L. Ed. 241; U. S. v. Colgate & Co., 250 U. S. 300, 39 S. Ct. 465, 63 L. Ed. 992, 7 A. L. R. 443; Loewe v. Lawlor, 208 U. S. 274, 28 S. Ct. 301, 52 L. Ed. 488, 13 Ann. Cas. 815; U. S. v. Patten, 226 U. S. 525, 33 S. Ct. 141, 57 L. Ed. 333, 44 L. R. A. (N. S.) 325. The inquiry is not as the court below conceived it to be, whether or not there was a combination to exclude the appellants' organs from interstate trade or commerce. It is as much a violation of the Sherman Act, as amended

by the Clayton Act (15 USCA § 1 et seq.), for combinations to exclude individuals from work in interstate commerce. Finding that the installation of the organ was work in interstate commerce and that there was a combination directly to restrict and obstruct that work, the opportunities of engaging therein was work of interstate commerce. But the interference with this interstate commerce was not confined to preventing workmen from engaging in the employment of the appellants as nonunion men. There was a combination to obstruct and interfere with the appellants in carrying out their interstate trade and commerce in their usual and practical way which, of itself, was a violation of the act. It is not material or important whether the restraint operates upon this interstate commerce at the point of origin or at the point where it comes to rest. Bedford Cut Stone Co. v. Journeymen Stone Cutters' Ass'n, 274 U. S. 37, 47 S. Ct. 522, 71 L. Ed. 916, 54 A. L. R. 791; Binderup v. Pathe Exchange, Inc., 263 U. S. 291, 44 S. Ct. 96, 68 L. Ed. 308; Ramsay Co. v. Associated Bill Posters, 260 U. S. 501, 43 S. Ct. 167, 67 L. Ed. 368; Duplex Printing-Press Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196. The combination formulated by the appellees to curtail the liberty of the appellants and their employees to engage in the phase of the interstate commerce involving installation was a violation of the anti-trust laws, and their refusals to permit nonunion men to work and striking to interfere with the work of the appellants in installing organs was a violation of the anti-trust acts. Duplex Printing-Press Co. v. Deering, supra; Bedford Cut Stone Co. v. Journeymen Stone Cutters' Ass'n, supra.

The organs involved were not part of the building construction, and there is no evidence of any community of interest between the erectors of these organs and the numerous and various trades engaged in erecting a building. There was no evidence of close contact between these groups, but the evidence is ample and undisputed that the purpose of the appellees was to secure for the organ workers' union a complete monopoly of the work of installing organs in New York and Northern New Jersey and to bring about a condition which would impose upon the craftsmen in the trade, for refusing to join their union, an impossibility of employment in their trade and thereby gaining a livelihood.

The appellee Meller made clear upon his examination that he was a member of the Building Trades Council and I "have some-

thing behind me." This he described as full sympathetic support, and, as he said, "no organ will be erected in New York City unless they erect it by union labor, as the building trades will not work with any non-union workers." The courts have condemned such interference. Hitchman Coal Co. v. Mitchell, 245 U. S. 249, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461; Bitterman v. Louisville & Nashville R. Co., 207 U. S. 205, 28 S. Ct. 91, 52 L. Ed. 171, 12 Ann. Cas. 693; Central Metal Products Corp. v. O'Brien (D. C.) 278 F. 827; Hodge v. Meyer (C. C. A.) 252 F. 479; Amer. Malting Co. v. Keitel (C. C. A.) 209 F. 351; Irving v. Joint District Council (C. C.) 180 F. 896; Lehigh Structural Steel Co. v. Atlantic Smelting & Refining Works, 92 N. J. Eq. 131, 111 A. 376; McCord v. Thompson-Starrett Co., 129 App. Div. 130, 113 N. Y. S. 385.

In thus preventing the appellants and their employees from carrying on their business because the workmen do not belong to the union, there was formed a combination having for its primary purpose the obstruction of the appellants in carrying on their interstate business. The injury to them is not merely incidental; the direct and immediate purpose is to oust the appellants and their employees from the conduct of their business in New York and its vicinity unless they submit. The means adopted to declare a labor boycott of all the trades on the buildings, within the affected area where the appellants carry on their business, and by their control of the building business, make it impossible for the owners, contractors, or architects to do business in this area with the appellants. Such combination is a secondary boycott. Duplex Printing-Press Co. v. Deering, supra; O'Brien v. Fackenthal (C. C. A.) 5 F.(2d) 389. In such a combination against an employer there is every suggestion of coercion, attempted monopoly, and deprivation of livelihood and remoteness of the legal purpose of the union to better its members' condition. American Steel Foundries v. Tri-City Council, 257 U. S. 184, 42 S. Ct. 72, 66 L. Ed. 189, 27 A. L. R. 360; Hitchman Coal & Coke Co. v. John Mitchell, 245 U. S. 229, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461; Iron Molders' Union v. Allis-Chalmers Co. (C. C. A.) 166 F. 45, 20 L. R. A. (N. S.) 315.

The record before us justified a decree in favor of the appellants for an injunction.

Decree reversed.

AUGUSTUS N. HAND, Circuit Judge (concurring).

I concur with the majority because of the controlling decisions of the Supreme Court in Duplex Printing-Press Co. v. Deering, 254 U. S. 443, 41 S. Ct. 172, 65 L. Ed. 349, 16 A. L. R. 196, and Bedford Cut Stone Co. v. Stone Cutters' Association, 274 U. S. 37, 47 S. Ct. 522, 71 L. Ed. 916, 54 A. L. R. 791.

The District Judge relied on United Mine Workers v. Coronado Coal Co., 259 U. S. 344, 42 S. Ct. 570, 66 L. Ed. 975, 27 A. L. R. 762, United Leather Workers' Union v. Herkert & Meisel Trunk Co., 265 U. S. 457, 44 S. Ct. 623, 68 L. Ed. 1104, 33 A. L. R. 566, and Industrial Association v. United States, 268 U. S. 64, 45 S. Ct. 403, 69 L. Ed. 849. But these decisions do not, in my opinion, support the conclusion reached. Mining is not interstate commerce. United Mine Workers v. Coronado Coal Co., supra. Manufacturing is not interstate commerce. United Leather Workers' Union v. Herkert & Meisel Trunk Co., supra. Building is not interstate commerce. Industrial Association v. United States, supra. In all of these cases the interference was at a point where interstate commerce was not in operation, and not, as here, at a point where in contemplation of law it continued to exist.

The fact that the installation of the organs was interstate commerce required that such installation (in the same way as transportation) should be free from unlawful interference. Because of the decisions in Duplex Printing-Press Co. v. Deering, and Bedford Cut Stone Co. v. Stone Cutters' Association, supra, we must hold that the interference here was unlawful and was a violation of the Sherman Anti-Trust Law (15 USCA §§ 1–7, 15).