## C. E. STEVENS CO. et al. v. FOSTER & KLEISER CO. et al.

### No. 9215.

Circuit Court of Appeals, Ninth Circuit.

Feb. 19, 1940.

HANEY, Circuit Judge, dissenting.

Roy E. Jackson, Jones & Bronson, H. B. Jones, and Robert E. Bronson, all of Seattle, Wash., for appellants.

Morrison, Hohfeld, Foerster, Shuman & Clark and Herbert W. Clark, all of San Francisco, Cal., and Kerr, McCord & Carey, and Stephen V. Carey, all of Seattle, Wash. (J. Hart Clinton, of San Francisco, Cal., of counsel), for appellees.

Before WILBUR, HANEY, and HEALY, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order of the District Court sustaining appellees' demurrer to appellants' complaint without leave to amend on the ground that no cause of action was alleged. The action was filed under Section 7 of the Sherman Anti-Trust Act (Act of July 2, 1890, Chap. 647, 26 Stat. 209, as superseded by Act of Oct. 15, 1914, Chap. 323, § 4, 38 Stat. 731, 15 U.S. C.A. § 15).[1] Both parties are engaged in advertising by means of billboards.

The ruling of the District Court was based on the decision of this court in Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir., 85 F.2d 742, an action against the same defendant by another competitor. In that case plaintiff sought damages under Section 7 of the Sherman Anti-Trust Act based upon similar activities by the defendant therein as are alleged in the case at bar. In the Special Site Sign Company case, supra, the plaintiff, in an effort to support federal jurisdiction under the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15, alleged such interstate activities by the defendant as the shipping by it of designs, posters, lithographs, stencils and paints from one state to another. It also alleged the effect of outdoor advertising in stimulating interstate trade. It alleged that the defendant attempted to monopolize the outdoor advertising business by acquiring control of numerous outdoor advertising companies by leasing of outdoor advertising sites at rentals in excess of their true worth, by leasing more sites than were intended to be used in the business, by fraudulent activities leading to the cancellation of leases of advertising sites obtained by plaintiffs, and by other unfair business practices designed to squeeze out competitors. See Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir., 85 F.2d 742, 753, supra. This court held that the complaint did not state a cause of action. It was held that the outdoor advertising business, as a whole, could not be viewed as interstate commerce merely because there was incidentally involved therein the shipment of posters, lithographs, etc., in interstate commerce. It was held that no acts were alleged which directly affected the interstate trade in posters or lithographs and that the acts of the alleged conspirators in

---

[1] Section 7 of the Sherman Anti-Trust Act, reads as follows:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee." July 2, 1890, c. 647, § 7, 26 Stat. 210, as superseded by Act of Oct. 15, 1914, c. 323, § 4, 38 Stat. 731, 15 U.S.C.A. § 15.

inflicting the damage in no way related to the allegations of a conspiracy to restrict interstate commerce in posters and lithographs, etc. It was pointed out in that decision that all the acts alleged as means for carrying out the conspiracy were adopted to the injury or destruction of the plaintiff's business in its intrastate aspects.

In the case at bar, complaint sets out the general methods of business of companies involved in the outdoor advertising business. It is alleged that the advertiser generally contracts with a lithographer for posters to be used in the advertising campaign. Advertising agencies solicit contracts of advertisers for the placing of the posters upon billboards. These advertising agencies are organized into the National Outdoor Advertising Bureau, Inc. This bureau contracts with bill posting companies called "plant owners" which control sites for billboards for the execution of the contracts secured by the agencies. Since 1927 bill posting companies have been organized into the Outdoor Advertising Association of America, Inc., a consolidation of the Associated Bill Posters and Distributors of the United States and Canada and the Outdoor Advertising Association of America. These associations grant a "franchise" in each community where a billboard advertising is done. Foster & Kleiser controls 600 franchises and the General Outdoor Advertising Company, Inc., an association of bill posters, organized in 1924, controls 1000 franchises. It is alleged that the Outdoor Advertising Association, Inc., is dominated and controlled by the General Outdoor Advertising Company and by Foster & Kleiser Company. The appellants are "independent" operators and do not belong to the Outdoor Advertising Association of America, Inc. The National Outdoor Advertising Bureau (association of advertising agencies) executes all advertising contracts secured by it through the General Outdoor Advertising Company which company assigns all contracts calling for posting or painting in the Pacific Coast area to Foster & Kleiser Company for execution. That the activities of these different companies frequently overlap is shown by the allegations of the complaint that con-

tracts for outdoor advertising are made not only by agencies but by bill posting companies. It should be noted that the General Outdoor Advertising Company is not made a party to this action.

The conspiracy alleged is one to monopolize all branches of the outdoor advertising business. As in the Special Site Sign case, it is alleged that in furtherance of the conspiracy the conspirators paid for advertising sites in excess of their worth, caused the cancellation of leases of appellants and did other acts designed to secure for appellees a monopoly of advertising contracts and sites upon which to execute the same. It is also alleged that appellees conspired to place restraints upon interstate trade in posters and lithographs and that the conspirators refused to post lithographs of manufacturers who sold or furnished samples to independent poster plants.

It is claimed, and the basic assumption of the complaint is, that the bill posting business as a whole must be considered as interstate commerce and, consequently, that a monopoly of this business in any of its aspects is a violation of the Sherman Anti-Trust Act. It is also claimed and alleged that appellees conspired to restrain and restrict the shipment of posters and lithographs in interstate commerce.

Insofar as the contention that appellees conspired to restrain the interstate commerce in posters and lithographs is concerned, an analysis of the complaint as a whole clearly shows that the main object of the alleged conspirators was the securing of control of the bill posting business in its intrastate aspects involving the securing of advertising contracts and billboard sites upon which to execute the same. [2] It clearly appears from the complaint that the principal business of the appellee Foster & Kleiser Company was the operating of outdoor advertising plants and the securing of advertising contracts, not the sale of posters or lithographs. These materials are sold by lithographers who are located in states other than the Pacific Coast area, principally in Kentucky, Ohio and Illinois. In view of these allegations it can hardly be said that appellees' primary object was to monopo-

---

[2] Obviously the securing of local billboard sites and the posting of advertising matter thereon are local transactions. Nor does the fact that bill posting contracts are made between persons residing in different states transform the transaction into an interstate one. Ware &

Leland v. Mobile County, 209 U.S. 405, 28 S.Ct. 526, 52 L.Ed. 855, 14 Ann.Cas. 1031; Blumenstock Bros. Adv. Agency v. Curtis Pub. Co., 252 U.S. 436, 40 S.Ct. 385, 64 L.Ed. 649; Pacific Railways Advertising Co. v. Conrad, 168 Cal. 91, 141 P. 916.

lize the trade in posters. It is true, as we have stated, that appellants alleged that the conspiracy in part involved the preventing of appellants from obtaining posters and that in order to effect this result the Outdoor Advertising Association of America, Inc., refused to post lithographs if the lithographer dealt with non-association members. As to the effect of this allegation, we quote from appellees' brief: "At this point it may be conceded that the conspiracy just described and the means by which it was to be effected would be unlawful under the Sherman Act. (Ramsay Co. v. Bill Posters Association (1923), 260 U.S. 501, 43 S.Ct. 167, 67 L.Ed. 368). However, 'In a civil action for damages sustained because of a conspiracy in restraint of trade, the right of recovery is not based upon the conspiracy, but upon the injuries resulting therefrom'. Special Site case, supra, 85 F.2d 742, at page 750. Therefore, we must next inquire whether the second amended complaint contains sufficient allegations of fact showing that this alleged conspiracy was made effective to the injury of appellants."

Insofar as this conspiracy is concerned, it is not alleged that it was successful or effective to injure appellants' business. That is, it is not definitely and explicitly alleged that appellants were unable to secure posters necessary for fulfilling their advertising contracts. The appellants, after alleging that the action of the conspirators in refusing to post lithographs of manufacturers who dealt with independent plant owners was for the purpose of hampering and preventing such owners, including the plaintiff, from securing lithographs and posters, alleged: "That thereby the said independents were obstructed and hindered in their business and prevented from giving a full and adequate outdoor advertising service to their customers, competition with the association members and said conspirators was hindered and obstructed, and the free movement in interstate commerce of posters, lithographs, painted designs and contracts for outdoor advertising was monopolized, attempted to be monopolized, and was unreasonably restrained."

This is not a definite allegation that appellants were unable to obtain posters or lithographs with which to execute their advertising contracts because of the activities of appellees or that advertisers seeking to deal with appellants were unable to secure posters for posting by appellants. If that was in fact the case, appellants should have alleged it to be so, definitely and clearly. An analysis of the complaint as a whole shows that the alleged damage to appellants flowed not from inability of appellants to obtain posters but from inability to obtain advertising contracts and billboard sites upon which to execute the same. [3]

We do not hold that because the ultimate object of a conspiracy is to obtain a monopoly of intrastate business or commerce such an object can be brought about by a restraint

---

[3] As we have stated, the alleged activities of the appellees complained of related principally to the obtaining of a monopoly of advertising sites and the securing of a monopoly of outdoor advertising contracts. As to damages, it is alleged:

"That the aforesaid acts, on the part of the defendant company and the other defendants herein named, were in unreasonable restraint of trade and commerce among the several states and did constitute a monopoly and were and are an attempt to monopolize the said trade and commerce, and did create a monopoly thereof greatly to the damage of the plaintiff company, and that the plaintiff company was unreasonably restrained in its trade and competition with defendant in the outdoor advertising business, as heretofore defined and explained, all of which was injurious to the plaintiff company and excluded the plaintiff company from fair competition in the said trade and commerce, and because of such inability to compete in the said trade and commerce during the periods mentioned, to and including the date of the commencement of this action, the plaintiff company has been damaged in that its business was rendered unprofitable, and the profits of its said trade and commerce have diminished, and the plaintiff company has suffered loss and been damaged thereby, from said year 1924 to the time of filing the complaint, and furthermore, as set forth more particularly in paragraph XV hereof, the plaintiff company has suffered great loss of profits and moneys invested and damage by reason of its inability to engage in said trade and commerce in the City of San Francisco and the State of California, all in the sum of three hundred and fifty thousand dollars ($350,000.00).

"Wherefore, plaintiff, C. E. Stevens Company, demands judgment against defendants for the sum of three hundred and fifty thousand dollars ($350,000.00), and treble damages, together with reasonable counsel fees, besides the costs and disbursements of this action."

of interstate commerce without violating the Sherman Anti-Trust law. This is not the law. See Bedford Cut Stone Co. v. Journeyman Stone Cutters' Ass'n, 274 U.S. 37, 47, 47 S.Ct. 522, 71 L.Ed. 916, 54 A.L.R. 791.

In the case at bar, as we have pointed out, although a conspiracy to control interstate trade in posters is alleged as one of the means of acquiring monopoly in the billposting business, it was not alleged that such a conspiracy to restrain the interstate movement of posters was effective and that appellants were damaged thereby. By the device of alleging a conspiracy to restrain interstate trade in posters and lithographs without alleging that this conspiracy was effective and worked to the damage of appellants, they cannot recover damages arising from the alleged conspiracy to prevent the acquisition and use of billboards and to obtain a monopoly of advertising contracts, activities intrastate in character, when it is clear that the purpose of the conspiracy as a whole is a monopoly of intrastate business.

In Ramsay Co. v. Associated Bill Posters, 260 U.S. 501, 43 S.Ct. 167, 67 L.Ed. 368, principally relied upon by appellants, the conspiracy charged was not only one to monopolize the bill posting business in United States and Canada, but also one to "dominate and control all trade and commerce in posters within such limits." And the manufacturers of posters had "By threats of withdrawal of patronage * * * been prevented from furnishing posters to independent billposters or to advertisers desiring to do business with independents except upon prohibitive terms." Advertisers were not permitted to purchase "stock" posters unless willing to have them displayed upon boards of members and independent billposters could not purchase such matter at all. Thus, there was present in that case the essential element absent in the case at bar, that is, an effective control of the interstate trade in posters. There would be, of course, some incidental effect on the interstate trade in posters and lithographs by the monopoly of the intrastate aspects of the outside advertising business. But the primary object of the conspiracy as alleged herein was the control of the intrastate business and such activities were outside the scope of the Sherman Anti-Trust law, supra. In Ramsay Co. v. Associated Bill Posters, supra, it was stated: "The purpose of the combination here challenged is to destroy competition and secure a monopoly by limiting and restricting commerce in posters to channels dictated by the confederates, to exclude from such trade the undesired, including the plaintiffs, and to enrich the members by demanding noncompetitive prices."

In Bedford Cut Stone Co. v. Journeyman Stone Cutters' Ass'n, 274 U.S. 37, 47 S.Ct. 522, 524, 71 L.Ed. 916, 54 A.L.R. 791, supra, it was stated: "The product against which the strikes were directed, it is true, had come to rest in the respective localities to which it had been shipped, so that it had ceased to be a subject of interstate commerce * * * ; and interferences for a purely local object with its use, with no intention, express or implied, to restrain interstate commerce, it may be assumed, would not have been a violation of the Anti-Trust Act ( * * * ; United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 410, 411, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762). But these interferences were not thus in pursuit of a local motive —they had for their primary aim restraint of the interstate sale and shipment of the commodity. Interstate commerce was the direct object of attack, 'for the sake of which the several specific acts and courses of conduct (were) done and adopted.' "

In Coronado Coal Company v. United Mine Workers of America, 268 U.S. 295, 310, 45 S.Ct. 551, 556, 69 L.Ed. 963, the Supreme Court said: "The mere reduction in the supply of an article to be shipped in interstate commerce by the illegal or tortious prevention of its manufacture or production is ordinarily an indirect and remote obstruction to that commerce. But when the intent of those unlawfully preventing the manufacture or production is shown to be to restrain or control the supply entering and moving in interstate commerce, or the price of it in interstate markets, their action is a direct violation of the Anti-Trust Act."

See, also, Local 167, etc., v. United States, 291 U.S. 293, 297, 54 S.Ct. 396, 78 L.Ed. 804. In all these cases it is held that when acts intrastate in character are relied upon to bring a case within the scope of the Sherman Anti-Trust Act, supra, such acts must be done with the primary intention of monopolizing or burdening the free movement of goods in interstate commerce. As we have stated, it is clear from a reading of the complaint as a whole that the purpose of the conspiracy alleged was not a monopoly of the outdoor advertising business in its interstate aspects, that is, the control of poster or lithograph trade but, rather, the control of the local business of securing advertising contracts and billposting.

The other contention of appellants, that the outdoor advertising business as a whole must be considered as interstate commerce per se, was dealt with in our decision in Foster & Kleiser Co. v. Special Site Sign Co., supra. We found no merit in it. It is now contended, however, that under the "expanded concept of interstate commerce" as announced in recent decisions of the Supreme Court arising under the National Labor Relations Act (Act of July 5, 1935, 49 Stat. 449, 29 U.S.C.A. § 151 et seq.; N.L.R.B. v. Jones & Laughlin S. Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; N. L. R. B. v. Fruehauf Trailer Co., 301 U. S. 49, 57 S.Ct. 630, 642, 81 L.Ed. 918, 108 A.L.R. 1352; N. L. R. B. v. Friedman-Harry Marks Clothing Co., 301 U.S. 58, 57 S.Ct. 630, 645, 81 L.Ed. 921, 108 A.L.R. 1352; Santa Cruz Fruit Packing Co. v. N. L. R. B., 303 U.S. 453, 58 S.Ct. 656, 82 L. Ed. 954; N. L. R. B. v. Fainblatt, 306 U.S. 601, 59 S.Ct. 668, 83 L.Ed. 1014), a cause of action was stated under the Sherman Anti-Trust Act, supra.

Under the National Labor Relations Act, supra, the National Labor Relations Board is empowered to prevent certain described unfair labor practices affecting commerce. § 10(a) of the Act, 29 U.S.C.A. § 160(a). The term "affecting commerce" is defined in the National Labor Relations Act as meaning "in commerce or, burdening or obstructing commerce or the free flow of commerce, or having led or tending to lead to a labor dispute burdening or obstructing commerce or the free flow of commerce." § 2(7) of the Act, 29 U.S.C.A. § 152(7). The questions discussed in the cases cited by appellants arising under the National Labor Relations Act have to do with the power of Congress to exercise control over activities which separately considered are intrastate but which, because of their close and substantial relation to interstate commerce, have an injurious effect upon it. The right of Congress to deal with these activities is based upon its power to protect interstate commerce when injuriously affected by acts which are local in character. This is an entirely different question than presented here. The question in the case at bar is not the extent of the power of Congress over intrastate activities affecting interstate commerce, but whether or not the conduct complained of is within the scope of the Sherman Anti-Trust Law. The question is what Congress has declared to be illegal under the Sherman Anti-Trust Law.[4] As we have stated, the Supreme Court, in determining what Congress intended to forbid by the enactment of the anti-trust laws, has held that activities, intrastate in character, not motivated by the primary purpose of monopolizing or restraining commerce among the several states, are not covered by such laws although such activities might incidentally affect interstate commerce. United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975, 27 A.L.R. 762, supra; Coronado Coal Co. v. United Mine Workers of America, 268 U.S. 295, 45 S.Ct. 551, 69 L.Ed. 963; Bedford Cut Stone Co. v. Journeyman Stone Cutters' Ass'n., 274 U.S. 37, 47 S.Ct. 522, 71 L.Ed. 916, 54 A.L.R. 791, supra; Local 167 v. United States, 291 U.S. 293, 54 S.Ct. 396, 78 L.Ed. 804, supra; Apex Hosiery Co. v. Leader, 3 Cir., 90 F.2d 155.

The decisions of the Supreme Court in United States v. Rock Royal Co-Operative, Inc., 307 U.S. 533, 59 S.Ct. 993, 995, 83 L.Ed. 1446, and Currin v. Wallace, 306 U.S. 1, 59 S.Ct. 379, 83 L.Ed. 441, cited by appellants, have to do with the validity of the Agricultural Marketing Agreement Act of June 3, 1937, 50 Stat. 246, 7 U.S.C.A. § 601 et seq., and the Tobacco Inspection Act of August 23, 1935, 49 Stat. 731, 7 U.S.C.A. §§ 511 to 511q, respectively, and have no bearing on the case at bar.

Appellants contend that even if the demurrer was properly sustained the court erred in dismissing the action without leave

---

[4] Section 1 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 1, provides: "Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. * * *"

Section 2 of the Sherman Anti-Trust Act, 15 U.S.C.A. § 2, provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, * * *."

Section 1 of the Clayton Act, 38 Stat. 730, 15 U.S.C.A. § 12, provides: " 'Commerce,' as used in sections 12 to 27, inclusive, of this chapter, means trade or commerce among the several states * * *."

The Anti-Trust Act does not declare unlawful conspiracies to control local trade which may incidentally affect interstate commerce.

to further amend. Leave was granted to amend to clarify the complaint. No other amendment was requested. The appellees contend that in the absence of a request it was not error to refuse leave to amend, citing in support of their contention, Rule 15 (a) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, and Simpkins Federal Practice Rules of Civil Procedure, 3d Ed., p. 313, § 356. The amendment allowed to clarify certain terms used in the complaint did not substantially change the situation of the paties. The matter of giving leave to amend is one in the sound discretion of the trial court. But leave is to be "freely given when justice so requires". Rule 15(a), F.R.C.P., supra. The reasons given by the trial court for denying leave to amend are persuasive here that there was no abuse of discretion. [5] We place our decision sustaining the trial court in refusing leave to amend upon the ground that there was no abuse of discretion in such refusal and not upon the ground that appellants failed to request leave to amend after the court had announced that the demurrer to the complaint would be sustained without leave to amend.

Affirmed.

HEALY, Circuit Judge, concurs in the result.

HANEY, Circuit Judge (dissenting).

Unable to agree with either the reasoning or the result obtaining in the majority opinion, I am constrained to dissent and hereby set forth my reasons therefor.

I dissent upon the ground that the majority too narrowly applies the Sherman Anti-Trust Act by reliance on Foster & Kleiser Co. v. Special Site Sign Co., 9 Cir., 85 F.2d 742. I believe that case does not control here for two reasons. The first is that while the rule regarding the Congressional power over commerce has not been enlarged, the application of the exercise of the power, the anti-trust act, has been "expanded", as witness the Labor Board cases, cited in the majority opinion. Both the Sherman Anti-Trust Act, and the National Labor Relations Act cover not only inter-

state commerce, but intrastate activities which "directly" affect such commerce. National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37–41, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. There should be no discrimination in the application of the two acts. I do not agree with the majority in its differentiation with respect to the right and power of Congress to protect interstate commerce by means of the National Labor Relations Act on the one hand, and the scope of the Sherman Anti-Trust Act on the other. Both acts stem from the same constitutional source, each striving to protect the same kind of commerce. If possible they should each be construed to effectuate their purpose, but this cannot be done by applying diametrically opposed constructions, by seeking "mathematical or rigid formulas", [1] nor by applying distinctions based upon form and not upon substance.

In this connection, I think it should be stated that the majority's attempt to distinguish the labor board cases, on the ground that in such cases the court was considering the power of Congress over interstate commerce, whereas here we are merely considering the scope of the anti-trust act, seems to require little discussion. It was necessary to determine the scope of the National Labor Relations Act before its constitutionality could be determined. National Labor Relations Board v. Jones & Laughlin Steel Corp., supra, 301 U.S. at page 29, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352. Thus the same question was in fact considered in the labor board cases, as is presented here. The majority also state that intrastate activities, lacking an intent to violate the statute, are not within the anti-trust laws "although such activities might incidentally affect interstate commerce". The meaning of the statement is not quite clear. the phrase is broad enough to include an incidental "direct" effect upon interstate commerce, and if such meaning was intended, I think it is clearly erroneous.

The second reason why Foster & Kleiser Co. v. Special Site Sign Co., supra, is not controlling, is that when we are considering the applicability of an exercise of the Con-

---

[5] "This case having on both sides and for a long time had the active attention of eminent counsel who have been advised of the progress and outcome of the similar cases herein and in the briefs cited, and plaintiffs' complaint having been amended twice already, the demurrer to

the second amended complaint will be as to all defendants sustained without leave to amend."

[1] Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 467, 58 S.Ct. 656, 660, 82 L.Ed. 954.

gressional power over commerce, I think each case must be decided on its own facts.[2]

A demurrer was sustained to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. The complaint stated a cause of action if it alleged facts showing: (1) jurisdiction in the court over the subject-matter; (2) ownership of a right by appellants; (3) violation of such right by appellees; and (4) damage or injury to appellants resulting from such violation. United States v. McIntire, 9 Cir., 101 F.2d 650, 653; United States v. Humboldt Lovelock Irr. Light & P. Co., 9 Cir., 97 F.2d 38, 42. If these elements appear in the complaint, then the demurrer was erroneously sustained.

First. That the complaint states facts showing that the trial court had jurisdiction of the cause of action is not questioned and need not be discussed.

Second. The right claimed by appellants is to carry on its business free from injury caused by a violation of the Sherman Anti-Trust Act by appellees. 15 U.S.C.A. § 15. In other words, appellants had the right to be uninjured by a violation of the Sherman Anti-Trust Act, and if they were injured by a violation of such act by appellees, then appellees are liable. This element (i. e., the ownership of such right by appellants) of necessity appears in the complaint.

Third. To determine whether appellees injured appellants by violating the Sherman Anti-Trust Act, it is necessary to determine what is prohibited by such act, and whether appellees took any prohibited action.

*Prohibitions of the act.* Section 1 of the act, 15 U.S.C.A. § 1, declares illegal every "contract, combination * * * or conspiracy, in restraint of trade or commerce" and declares it to be a misdemeanor for any person to "make any such contract or engage in any such combination or conspiracy". Section 2, 15 U.S.C.A. § 2, declares: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce * * * shall be deemed guilty of a misdemeanor * * *." While the meaning of the words "contract", "combination", "conspiracy", "combine", and "conspire" is not particularly recondite, the meaning of "in restraint of trade" and "monopolize" is more obscure, and it is the meaning of the latter words with which we are concerned.

It has been said that "no statute ever passed since the foundation of the government has been the subject of more difference of opinion or the cause of more perplexity" than the act in question,[3] and that it "is necessarily vague, because, in men's mind, the evil dreaded is vague, and like words, therefore, have been used to express it".[4]

The bill introduced by Senator Sherman regarding the subject was coolly received by the judiciary committee to which it was referred, and Senator Hoar drafted the bill which became the act in question. His statements, and the debates in Congress disclose that he intended that the words "restraint of trade" and "monopolize" should be given their technical meaning known to the common law.[5] However, in the second case under the Sherman Act to come before the Supreme Court, it held that "debates in congress are not appropriate sources of information from which to discover the mean-

[2] Compare: Sugar Institute v. United States, 297 U.S. 553, 600, 56 S.Ct. 629, 80 L.Ed. 859; Kansas City, Ft. S. & M. R. Co. v. Secretary of State of Kansas, 240 U.S. 227, 333, 36 S.Ct. 261, 60 L. Ed. 617; Baltic Mining Co. v. Massachusetts, 231 U.S. 68, 85, 34 S.Ct. 15, 58 L.Ed. 127; Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 467, 58 S.Ct. 656, 82 L.Ed. 954. It seems probable that it was upon this theory that Schechter Poultry Corp. v. United States, 295 U.S. 495, 55 S.Ct. 837, 79 L.Ed. 1570, 97 A. L.R. 947, and Carter v. Carter Coal Co., 298 U.S. 238, 56 S.Ct. 855, 80 L.Ed. 1160, were held to be "not controlling" in National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 40, 57 S.Ct. 615, 81 L.Ed. 893, 108

A.L.R. 1352. See, also, Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 466, 469, 58 S.Ct. 656, 82 L.Ed. 954.

[3] William B. Hornblower, "Anti-Trust" Legislation and Litigation (1911), 11 Col. L.Rev. 701, 702.

[4] William F. Dana, "Monopoly" Under The National Anti-Trust Act (1894), 7 Harv.L.Rev. 338.

[5] Robert L. Raymond, The Federal Anti-Trust Act (1910), 23 Harv.L.Rev. 353, n. 1; Edward A. Adler, Monopolizing At Common Law And Under Section Two Of The Sherman Act (1917), 31 Harv.L.Rev. 246, 247–250. Louis B. Bondin, The Sherman Act And Labor Disputes (1939), 39 Col.L.Rev. 1283, 1285 et seq.

ing of the language of a statute passed by that body". United States v. Trans-Missouri Freight Association, 166 U.S. 290, 318, 17 S.Ct. 540, 550, 41 L.Ed. 1007. Compare the statement in Federal Communications Comm. v. Pottsville Broadcasting Co., 60 S.Ct. 437, 440, 84 L.Ed. ——, January 29, 1940, that "the author of a document is ordinarily the authoritative interpreter of its purposes." If there was a committee report (a question which I am unable to determine here), and if it disclosed the intent mentioned, it is possible that such intent might yet be upheld, in view of the widespread use of such reports in the determination of Congressional intent.

Other than by the statements in Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann. Cas.1912D, 734, the Supreme Court seems to have made no effort to distinguish between §§ 1 and 2 of the act. [6] It has been suggested that the technical common law meaning of the words in §§ 1 and 2 be used. [7] Accordingly it has been argued that § 1 reaches only those restrictions placed voluntarily by one on his right to carry on his trade or calling, and that § 2 reaches involuntary restraints. [8] Such theory, however, has been rejected. [9] It has also been suggested that "restraint of trade" is "the equivalent of restraint of competition". [10] That theory has likewise been rejected. [11] It has also been suggested that the word "monopolize" in § 2, is synonymous with the common law offenses known as engrossing, forestalling and regrating. [12] That theory seems also to have been rejected. [13]

What, then, is the meaning of "restraint of trade" and "monopolize"? By the statements that those words were "synonymous" [14] and reached "voluntary" as well as "involuntary" restraints, [15] the Supreme Court, as a practical matter, has, it seems, obliterated any distinction between §§1 and 2 of the act, and "has treated the prohibitions of Section 2 as substantially comprehended within the prohibitions of Section 1." [16] As a result of the language in Standard Oil Co. v. United States, 221 U.S. 1, 58-62, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann. Cas.1912D, 734 (which, if dicta, was deliberate), it seems that about all that can be said is that the statutes prohibit (1) the means of reaching a result, and (2) any attempt to reach such result; and the result mentioned is the evil thought to arise from the acts covered by the general words "restraint of trade" and "monopolize" mentioned therein, 221 U.S. at page 52, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas. 1912D, 734. Wilder Mfg. Co. v. Corn Products Refining Co., 236 U.S. 165, 174, 35 S.Ct. 398, 59 L.Ed. 520, Ann.Cas.1916A, 118.

Stating it more plainly, the statutes prohibit (1) the attempt to acquire, and (2) the acquisition of, power to fix unreasonable prices, unreasonably limit production, or unreasonably deteriorate the quality of articles, which might have a direct effect on interstate or foreign commerce. Considering the superb uncertainty and lack of precision in the rule, there seems to be justification for the statement that the "existing confusion as to the distinction between sections 1 and 2 of the act, and what the elements under each section are, would seem to invite and justify more specific statements from the Supreme Court with respect thereto". Lynch v. Magnavox Co., 9 Cir., 94 F.2d 883, 885, 888.

While the indefiniteness of the rule has been repeatedly and consistently decried [17]

---

[6] Clarence E. Eldridge, A New Interpretation Of The Sherman Act (1914), 13 Mich. L.Rev. 1 and 113.

[7] Eldridge, supra, note 6; Albert M. Kales, Good And Bad Trusts (1917), 30 Harv.L.Rev. 830, 843.

[8] Eldridge, supra, note 6.

[9] United States v. Patten, 226 U.S. 525, 541.

[10] Hornblower, supra, note 2, p. 705.

[11] Chicago Board of Trade v. United States, 246 U.S. 231, 238, 38 S.Ct. 242, 62 L.Ed. 683; Appalachian Coals, Inc., v. United States, 288 U.S. 344, 360, 53 S.Ct. 471, 77 L.Ed. 825; Thornton, Combinations In Restraint Of Trade, 333, § 147, 339a, § 150a.

[12] Adler, supra, note 4, p. 259, 260.

[13] Standard Oil Co. v. United States, 221 U.S. 1, 57, 61, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734.

[14] Standard Oil Co. v. United States, 221 U.S. 1, 61, 31 S.Ct. 502, 55 L.Ed. 619, 34 L.R.A.,N.S., 834, Ann.Cas.1912D, 734.

[15] United States v. Patten, 226 U.S. 525, 541, 33 S.Ct. 141, 57 L.Ed. 333, 44 L.R.A.,N.S., 325.

[16] See Brief For The United States On The Meaning Of The Sherman Act, in United States v. Aluminum Company of America, Equity No. 85–73, in the United States District Court for the Southern District of New York.

[17] Annual Reports of the Attorney-General: for 1936, p. 21; for 1937, pp. 35, 39; for 1938, pp. 57, 59, 60.

it is recognized that the application thereof may be settled only "by the traditional case-by-case method of our common law".[18] In that respect, the anti-trust statutes do not differ from any other statutes. The difficulties confronting the enforcing agency have been pointed out.[19] While some of these do not concern the judiciary, the charge of indefiniteness in the statement of the rule by the courts is one of serious import and should be rectified. However, since the decisions of the Supreme Court are binding on this court, such decisions prevent an expression of independent opinion as to the meaning of the statutes. I have set forth only what I believe the Supreme Court has stated the meaning of the statutes to be.

*The alleged facts.* Appellants are known as "independent" owners of plants used for outdoor advertising displays. Appellees are members of an association and control 90% of the outdoor advertising in the Pacific Coast area. The complaint alleges that appellees entered into a conspiracy, the purposes of which were: to prevent appellants and others from engaging in the posting business, from securing and executing contracts for national posting business, and from securing posters with which to conduct such business; to prevent lithographers from supplying posters to appellants and others; and to prevent appellants and others from securing facilities to furnish an advertising service to advertisers.

From these allegations, it can be clearly seen that the end sought by appellees was the acquisition of power whereby they could fix unreasonable prices, and unreasonably limit the number of competitors.

The manner in which these objects were accomplished are alleged, but it is unnecessary here to relate them because the kind of means used is unimportant. The result of the means used is the thing of importance. In this connection it is alleged that appellees intended to restrain trade and monopolize when they formed the conspiracy and carried out the object thereof. If, by necessary operation of the conspiracy, there is an actual restraint, the statute is violated,[20] the actual intent being immaterial.[21] Intent, however, is material when the acts done "tend" to reach the prohibited result.[22] If it is doubtful whether the acts actually "tend" to monopolize, it will be presumed that they do, if there is an actual intent to monopolize,[23] or if such an intent can be inferred from the extent of the control thereby secured over the commerce affected as well as by the method which was used.[24] I am not, therefore, in accord with the expressions of the majority with respect to rules regarding "intent" because if an actual restraint is accomplished, the intent with which either intrastate or interstate acts are done, is immaterial, and if the acts only "tend" to restrain, then the intent with which such acts are done is material regardless of whether the acts are intrastate or interstate in character.

The trade or commerce affected must be interstate or international,[25] and the effect

[18] Annual Report of the Attorney-General for 1939, p. 39; Thurman W. Arnold, Antitrust Activities Of The Department Of Justice (1939), 19 Ore.L.Rev. 22, 31.

[19] See note 15.

[20] Addyston Pipe & Steel Co. v. United States, 175 U.S. 211, 244, 20 S.Ct. 96, 44 L.Ed. 136; Swift & Company v. United States, 196 U.S. 375, 395, 25 S.Ct. 276, 49 L.Ed. 518; United States v. Reading Co., 226 U.S. 324, 357, 33 S. Ct. 90, 57 L.Ed. 243; Bedford Cut Stone Co. v. Journeyman Stone Cutters' Ass'n 274 U.S. 37, 46, 47 S.Ct. 522, 71 L.Ed. 916, 54 A.L.R. 791.

[21] Standard Sanitary Mfg. Co. v. United States, 226 U.S. 20, 39, 33 S.Ct. 9, 57 L.Ed. 107; United States v. Patten, 226 U.S. 525, 541, 33 S.Ct. 141, 57 L.Ed. 333, 44 L.R.A.,N.S., 325; Thomsen v. Cayser, 243 U.S. 66, 85, 37 S.Ct. 353, 61 L.Ed. 597, Ann.Cas.1917D, 322; Paramount Famous Lasky Corp. v. United States,

282 U.S. 30, 44, 51 S.Ct. 42, 75 L.Ed. 145.

[22] United States v. American Linseed Oil Co., 262 U.S. 371, 388, 43 S.Ct. 607, 67 L.Ed. 1035; Maple Flooring Mfrs' Ass'n v. United States, 268 U.S. 563, 567, 45 S.Ct. 578, 69 L.Ed. 1093; Thornton, Combinations In Restraint Of Trade 417b, § 200.

[23] Swift & Company v. United States, 196 U.S. 375, 395, 25 S.Ct. 276, 49 L. Ed. 518; Coronado Coal Co. v. U. M. Workers, 268 U.S. 295, 310, 45 S.Ct. 551, 69 L.Ed. 963.

[24] United States v. Terminal R. R. Ass'n of St. Louis, 224 U.S. 383, 394, 32 S.Ct. 507, 56 L.Ed. 810; United States v. Reading Co., 226 U.S. 324, 357, 33 S.Ct. 90, 57 L.Ed. 243.

[25] United States v. Joint Traffic Association, 171 U.S. 505, 568, 19 S.Ct. 25, 43 L.Ed. 259; Anderson v. United States, 171 U.S. 604, 615, 19 S.Ct. 50, 43 L. Ed. 300; United States v. Patten, 226

thereon must be direct or immediate, and not indirect or incidental.[26] We must therefore determine whether accomplishment of the object of the conspiracy had such an effect here. The majority, in my opinion, has confused the "purpose" of the conspiracy with the means used to "accomplish" it. The fact that the conspiracy was accomplished by acts which if separately considered, would be intrastate, is immaterial.[27] "It is the effect upon commerce, not the source of the injury, which is the criterion".[28] Each case presents its distinctive questions arising from facts therein involved, as to whether the effect is direct or indirect.[29]

The complaint contains many allegations that the accomplishment of the conspiracy "obstructed and hindered" appellants in their business; and that "the free movement in interstate commerce of posters, lithographs, painted designs and contracts for outdoor advertising was monopolized, attempted to be monopolized, and was unreasonably restrained". It was also alleged that "in almost every case" the poster advertising contracts were "agreements between the parties thereto to ship posters, lithographs, designs, stencils and other advertising material from one of the states of the United States to another state". It seems apparent to me that the complaint contains sufficient allegations to show obstructions to the shipments mentioned, and therefore a decrease in interstate commerce. In view of Santa Cruz Fruit Packing Co. v.

National Labor Relations Board, supra, and Edison Co. v. National Labor Relations Board, 305 U.S. 197, 221, 59 S.Ct. 206, 83 L.Ed. 126, I think it inevitably follows that the effect was "direct".

Fourth. The last element of the cause of action, mentioned above, is the damage or injury to appellants resulting from the violation of the statute by appellees. I am not in accord with the holding of the majority, that there are no allegations to show that the conspiracy injured appellants' business. The following quotation, in my opinion, clearly controverts such holding: "That the aforesaid acts * * * did constitute a monopoly * * * greatly to the damage of * * * [appellants], and that the [appellants] company was unreasonably restrained in its trade and competition with [appellees] in the outdoor advertising business * * * all of which was injurious to the [appellants] company and excluded [it] * * * from fair competition in the said trade and commerce, and because of such inability to compete in the said trade and commerce * * * the [appellants] company has been damaged in that its business was rendered unprofitable, and the profits of its said trade and commerce have diminished, and * * * [it] has suffered loss and been damaged thereby * * *"

In addition there are other allegations of injury.

For these reasons I think the judgment should be reversed.

U.S. 525, 542, 33 S.Ct. 141, 57 L.Ed. 333, 44 L.R.A.,N.S., 325; Blumenstock Bros. v. Curtis Pub. Co., 252 U.S. 436, 441, 40 S.Ct. 385, 64 L.Ed. 649.

26 United States v. Joint Traffic Association, 171 U.S. 505, 568, 19 S.Ct. 25, 43 L.Ed. 259; Anderson v. United States, 171 U.S. 604, 615, 19 S.Ct. 50, 43 L.Ed. 300; United States v. Patten, 226 U.S. 525, 545, 33 S.Ct. 141, 57 L.Ed. 333, 44 L.R.A.,N.S., 325.

27 National Labor Relations Board v. Jones & Laughlin Steel Corp., 301 U.S. 1, 37, 38, 57 S.Ct. 615, 81 L.Ed. 893, 108 A.L.R. 1352; Santa Cruz Fruit

Packing Co. v. National Labor Relations Board, 303 U.S. 453, 466, 58 S.Ct. 656, 82 L.Ed. 954.

28 National Labor Relations Board v. Jones & Laughlin Steel Corp., supra, 301 U.S. at page 32, 57 S.Ct. 615, at page 622, 81 L.Ed. 893, 108 A.L.R. 1352.

29 National Labor Relations Board v. Jones & Laughlin Steel Corp., supra, 301 U.S. at page 32, 57 S.Ct. 615, at page 622, 81 L.Ed. 893, 108 A.L.R. 1352; Santa Cruz Fruit Packing Co. v. National Labor Relations Board, 303 U.S. 453, 467, 58 S.Ct. 656, 82 L.Ed. 954.