**NEW SANITARY TOWEL SUPPLY, INC., et al., Plaintiffs,**
v.
**CONSOLIDATED LAUNDRIES CORPO- RATION et al., Defendants.**

United States District Court
S. D. New York.

Nov. 30, 1962.

Adhered to on Reargument
Jan. 18, 1963.

See 213 F.Supp. 123.

Burton B. Turkus, New York City, for plaintiffs; Irwin N. Wilpon, Brooklyn, N. Y., of counsel.

Benjamin Levine, Brooklyn, N. Y., for defendants General Linen Supply & Laundry Co., Inc., Cascade Linen Supply Corp. of New Jersey and Fred S. Radnitz; John F. Sonnett and Ralph C. Menapace, New York City, of counsel.

Rosenman, Goldmark, Colin & Kaye, New York City, for defendants Central Coat, Apron & Linen Service, Inc., Sam Spatt, Standard Coat, Apron & Linen Service, Inc. (a New York Corporation), Standard Coat, Apron & Linen Service, Inc. (a New Jersey Corporation) and Charles Maslow; Seymour D. Lewis, Asa D. Sokolow and Justin Colin, New York City, of counsel.

Simpson, Thacher & Bartlett, New York City, for defendants Modern Silver Linen Supply Co., Inc. (a New York Corporation), Modern Silver Linen Supply Co., Inc. (a New Jersey Corporation) and Louis Gordon; Albert C. Bickford, A. F. MacManus and Whitney N. Seymour, Jr., New York City, of counsel.

Mervin C. Pollak, New York City, for defendants Linen Supply Institute of Greater New York, Inc., Harry Kessler, Linen Service Council of New Jersey; and Jack Orlinsky; Mervin C. Pollak, New York City, of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant Consolidated Laundries Corp.; Jay Topkis, New York City, of counsel.

CROAKE, District Judge.

Defendants move for an order granting partial judgment on the pleadings, pursuant to Rule 12(c) and Rule 12(h) of the Federal Rules of Civil Procedure on the ground that certain causes of action asserted in the complaint fail to state claims upon which relief can be granted.

This is a civil antitrust action for treble damages brought pursuant to Section 4 of the Clayton Act (15 U.S.C.A. § 15). Plaintiffs are three corporations and three individuals formerly engaged in the diaper service, linen supply, and commercial laundry businesses. They allege that they were driven out of these businesses by a conspiracy among the defendants unlawfully to restrain and to create a monopoly in interstate commerce.

For the purposes of this motion, the complaint may be divided into three categories of claims to the effect that:

1) Defendants conspired to injure and did injure the corporate plaintiffs in violation of the antitrust laws (15 U.S. C.A. §§ 1, 2, 13, 14 and 18).

2) As a result of the conspiracy, plaintiff Blue Diamond Laundry No. 1, Inc. ("Blue Diamond") suffered loss in the value of stock it had owned in Sanitary Diaper Corporation ("Sanitary Diaper"), and the individual plaintiffs Paul and Lawrence Ullman suffered losses in the value of stock they held in the corporate plaintiff New Sanitary Towel Supply, Inc. ("New Sanitary").

3) As a result of the conspiracy, plaintiffs Paul Ullman and Philip H. Lewis were compelled by defendants to sign restrictive covenants not to compete in the diaper, linen and laundry businesses for certain periods of time.

The motion seeks to have the second and third categories of claims dismissed.

■ As to the damage allegedly suffered as a result of the loss of value of stock of New Sanitary and Sanitary Diaper, it is clear that that part of the complaint must be dismissed.

Under Section 4 of the Clayton Act,[1] which reads in part as follows:

"Any person who shall be injured in his *business or property* by reason of anything forbidden in the antitrust laws may sue therefor * * *." (Emphasis added.),

it has been repeatedly held that the injury to the business or property of the complainant must be direct and not remote.[2] It has also been repeatedly held

---

1. 15 U.S.C.A. § 15.

2. Conference of Studio Unions v. Loew's Inc., 193 F.2d 51 (9th Cir., 1951), cert.

denied, 342 U.S. 919, 72 S.Ct. 367, 96 L.Ed. 687 (1952); Schwartz v. Broadcast Music, Inc., 180 F.Supp. 322 (S.D.

that a stockholder has no cause of action for the loss of the value of stock caused by injuries sustained by the corporation as a result of violation of the anti-trust laws.[3]

Plaintiffs state in their memorandum of law that New Sanitary and Sanitary Diaper have been dissolved and that, as a consequence, there is a doubt as to whether the dissolved corporations may maintain the antitrust actions or whether the stockholders may maintain them.[4] They now assert that these causes of action are, therefore, brought in the alternative.

The argument of plaintiffs is that defendants are attempting to attack the complaint piecemeal, and that after having had the causes of action for diminution in the value of the stock dismissed, defendants plan to make a motion, after the statute of limitations has run, to dismiss the direct actions by New Sanitary and Sanitary Diaper on the ground that said corporations had been dissolved.

There are a number of difficulties with these arguments. There is no allegation in the complaint that either New Sanitary or Sanitary Diaper had been dissolved, nor does it appear in the complaint that the claim for loss of value for the stock was pleaded in the alternative. Plaintiffs, however, are faced with a more fundamental difficulty. Even if it were alleged that the corporations were dissolved and unable to sue, and even if the claim for loss of value of the stock were pleaded in the alternative, the

question would still remain as to whether an action for such losses of value in stock is maintainable under Section 4 of the Clayton Act. The reason for the rule against such recoveries is not so much to prevent overlapping recompense to both corporation and stockholders, but is rather to prevent the recovery for injuries which are indirect in nature. This purpose is implicit from the opinion in the case of Fleischer v. A. A. P. Inc., 180 F.Supp. 717 (S.D.N.Y., 1959), appeal dismissed 264 F.2d 515 (2d Cir. 1959), cert. denied, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959). In that matter stockholders were precluded from maintaining an action for loss of the value of their stock despite the fact that the corporation was no longer in a position to bring an action for violation of the antitrust laws. Thus, regardless of any of the considerations raised by plaintiff, an action for loss of value of stock cannot be maintained.

 The second point is not so easily resolved. Defendants urge that the complaint does not allege actionable harm in asserting that plaintiffs Paul Ullman and Philip H. Lewis were coerced into executing the restrictive covenants. They maintain that such injury is not direct and is not an injury to the "business or property" within the meaning of Section 4 of the Clayton Act.

"Business or property" has been defined as follows:

"* * * It signifies ordinarily that which habitually busies, or engages, time, attention or labor, as a princi-

N.Y.1959); Productive Inventions, Inc. v. Trico Co. Products Corp., 224 F.2d 678 (2d Cir., 1955), cert. denied, 350 U.S. 936, 76 S.Ct. 301, 100 L.Ed. 818 (1956).

3. Bookout v. Schine Chain Theatres, Inc., 253 F.2d 292 (2d Cir., 1958); Fanchon & Marco v. Paramount, 107 F.Supp. 532 (S.D.N.Y.1952), rev'd on the grounds 202 F.2d 731, 36 A.L.R.2d 1336 (2d Cir., 1953).

4. As stated in the memorandum of law submitted by plaintiffs, § 105(8) of the Stock Corporation Law of the State of New York, and § 29 of the General Corporation Law of that State provide that a

dissolved New York corporation continues in existence for the purpose of collecting assets and winding up its affairs, and it may sue and be sued for such purposes. Rule 17(b), F.R.Civ.P., provides that the law under which the corporation was organized governs its capacity to sue (cf. Melrose Distillers v. United States, 359 U.S. 271, 79 S.Ct. 763, 3 L.Ed.2d 800 (1959)). Thus if the dissolved corporations were New York corporations, it would be clear that they would have a right to maintain this action. There is, however, no allegation in the complaint as to the state of incorporation of the corporate plaintiffs.

pal serious concern or interest. In a somewhat more truly economic, legal and industrial sense, it includes that which occupies the time, attention, and labor of men for the purpose of livelihood or profit,—persistent human efforts which have for their end pecuniary reward. It denotes 'the employment or occupation in which a person is engaged to procure a living.' Allen v. Commonwealth, 188 Mass. 59, 74 N.E. 287, 288, 69 L.R.A. 599." Roseland v. Phister Mfg. Co., 125 F.2d 417, 139 A.L.R. 1013 (7th Cir. 1942).

It is apparent from the complaint that these individual plaintiffs were active in the linen, diaper and laundry businesses for some period of time prior to their allegedly having been forced to sign the restrictive covenants. Coercion to drive them from their ordinary occupation seems to constitute injury to their "business or property" within the definition of that term quoted above. Moreover, there is a substantial authority to the effect that depriving a person of his occupation may be actionable under the antitrust laws.[5]

■ To say that Ullman and Lewis have been injured in their "business or property" does not necessarily lead to the conclusion that they have suffered an actionable wrong. The injury must be direct.[6]

The conspiracy, in the main, was allegedly directed at the businesses of the corporate plaintiffs. Therefore, there remains the question as to whether the injury complained of is of a kind sufficiently direct to give rise to a remedy.

■ As stated, it has been held that loss of value of shares of corporation damaged by violation of the antitrust laws is not actionable.[7] Moreover, the courts have said that loss of earnings by an employee, officer or director of such corporation is not recoverable.[8] The rationale of these cases is that the primary wrong was done to the business of the corporation and that any harm caused to individuals connected with the corporation was merely incidental.

■ The same doctrine might appear to be applicable in the case at bar. The gravamen of the complaint is that the damage defendants are alleged to have inflicted was to the businesses of the corporate plaintiffs. There is no explicit allegation that the object of the conspiracy was to harm the business of the individual plaintiffs, or even that the individuals had any particular businesses to harm. However, a fair inference can be drawn from the complaint that the individual plaintiffs had been engaged, through the corporations, in the laundry, diaper and linen businesses. If nothing more had been done than to destroy the businesses of the corporations, then the individual plaintiffs, as such, would have no right to recover. The complaint alleges that defendants went further, i. e., they coerced Ullman and Lewis to give up a right they otherwise would have had, that is, a right to engage in the laundry, diaper and linen businesses. Even though it is alleged that the principal purpose of the conspiracy was to injure the businesses of the corporations, if plaintiffs can show that they were forced out of this field of business activity, it cannot be said, as a matter of law, that they were not injured directly.[9]

It may be that the individual plaintiffs will have difficulty in establishing

5. Ramsay Co. v. Associated Bill Posters Assn., 260 U.S. 501, 43 S.Ct. 167, 67 L. Ed. 368 (1923); Fanchon & Marco v. Paramount, supra; Roseland v. Phister Mfg. Co., supra.

6. See cases cited in footnote 2, supra.

7. See cases cited in footnote 3, supra.

8. See Roseland v. Phister Mfg. Co., supra, 125 F.2d at 419, and Productive Inventions, Inc. v. Trico Products Co., supra, 224 F.2d at page 689.

9. See Schwartz v. Broadcast Music, Inc., supra, 180 F.Supp. at 335, recognizing that an antitrust conspiracy may have more than one object directed at one or more victims.

that any businesses, apart from those of the corporations, were destroyed, or that they were prevented from entering any businesses.[10] This question might turn upon the nature of the skills needed in the business, the importance of being acquainted with persons and firms in the industry, the good will of the individuals and the corporations, the position' and status Lewis and Ullman may have had in the industry, and many other factors. These issues are not before the court on this motion and must be left for trial.

Defendants further argue that since the restrictive covenants were delivered to corporations which are not defendants in this action and which are not alleged to be co-conspirators, the .injury is too indirect. There are, however, allegations in the complaint that defendants compelled the execution of the covenants and that the corporations holding them were controlled by some of the defendants. The execution of the restrictive covenants must, therefore, be deemed to have been compelled by members of the conspiracy. It must also be assumed as a fair inference that the covenants can be enforced by some of the defendants through the allegedly controlled corporations. The connection between the acts complained of and the injuries alleged need not be pleaded with further particularity.[11]

Accordingly, that branch of the motion seeking dismissal of the claims based on the alleged coercion to execute restrictive covenants not to compete will be denied.

Settle order on notice.

---

10. It should make little difference whether these individual plaintiffs were engaged in the businesses as individuals prior to the execution of covenants or whether they were merely prevented from entering such businesses as individuals thereafter. See Delaware Valley Mar. Sup. Co. v. American Tobacco Co., 184 F.Supp. 440 (E. D.Pa.1960), aff'd 297 F.2d 199 (3d Cir., 1961) cert. denied, 369 U.S. 839, 82 S.Ct. 867, 7 L.Ed.2d 843 (1962), wherein the court stated in dictum 184 F.Supp. at page 443:

"* * * The purpose of the antitrust laws is to be promote competition and to prevent its restraint. This purpose is no less thwarted when a person who intends and is prepared to embark in trade is stopped at the outset, than it is when a going business is brought to a standstill. It is as unlawful to prevent a person from engaging in business as it is to drive him out of business. Thomsen v. Union Castle Mail S. S. Co., 2 Cir., 1908, 166 F. 251, 253. * * *" But see Duff v. Kansas City Star Co., 299 F.2d 320 (8th Cir., 1962), which denied relief because plaintiff had been out of business for eight years prior to the acts complained of.

11. Cf. Package Closure Corp. v. Seabright Co., 141 F.2d 972 (2d Cir., 1944).